418 F.2d 1300
 LUIS HIRSCH y CIA. SOCIEDAD ANONIMA, Plaintiff-Appellant,
v.
ROSENBLATT CASING COMPANY, a partnership composed of Sigmond Rosenblatt, Robert Rosenblatt, Harry Rosenblatt and Rose Rosenblatt, Defendants-Appellees.
 No. 224.
 Docket 33586.
 United States Court of Appeals Second Circuit.
 Argued November 21, 1969.
 Decided December 3, 1969.
 
 George G. Hunter, Jr., New York City, for plaintiff-appellant.
 Copal Mintz, New York City, for defendants-appellees.
 Before LUMBARD, Chief Judge, ANDERSON, Circuit Judge, and BRYAN,* District Judge.
 LUMBARD, Chief Judge.
 
 
 1
 In this diversity action brought for damages for alleged breach of contract, we affirm the district court's dismissal of the complaint on a finding that the parties had not reached an agreement. Sitting without a jury, Judge Weinstein after hearing the principals testify in detail about the extended negotiations found that "the whole deal, from the point of view of the Argentinians turns on whether or not the letter of credit arranged * * * for some payment to be made outside Buenos Aires." He found that, in the absence of agreement on this essential term, no contract had come into existence and dismissed the action. We cannot say that Judge Weinstein's findings are clearly erroneous, and in fact they seem amply supported by the record. We affirm.
 
 
 2
 Plaintiff Hirsch y Cia., an Argentinian corporation, bases this action on an alleged agreement between it and Rosenblatt Casing Company of New York. The extended and confusing negotiations revealed in the testimony below looked towards an agreement under which Hirsch y Cia. would sell to Rosenblatt the daily production of kosher sausage casing from Hirsch's slaughter, under conditions meeting Jewish dietary standards, of a large number of sheep for six months. The parties had reached agreement both on the number of sheep to be slaughtered daily in Buenos Aires and on a price of $3.40 per hank of casing.[1] Immediately after sending a cable on May 5, 1965, accepting the price term, Rosenblatt conferred with his partners and his accountant who evidently urged him not to go through with the deal, in part because the letter of credit requested by Hirsch y Cia. was unacceptable. After some inconclusive negotiations with Hirsch, Rosenblatt believing himself not bound treated the matter as closed. This action followed.
 
 
 3
 Under New York law, which concededly governs here, the existence of a contract with an open term must be measured by section 2-204 of the Uniform Commercial Code.[2] This section provides that though one or more terms are left open a contract does not fail for indefiniteness if the parties have "intended to make a contract." As the Official Comments point out, intent should be determined by commercial standards, for in many situations it is commercially reasonable for both parties to intend to form a binding agreement which contains open terms. Thus a two-part inquiry is required: first, whether a term is indeed left open, and, if so, whether the parties may still have intended to be bound.
 
 
 4
 The crucial term found by the court to be undetermined was the letter of credit. Julius Hirsch, a brother of the president of Hirsch y Cia., conducted most of the negotiations with Robert Rosenblatt, president of defendant, in New York. The record shows that early in the negotiations Rosenblatt agreed to supply a letter of credit at an appropriate stage in the transaction. Despite this, Judge Weinstein found that the letter of credit term had never been settled.
 
 
 5
 Obviously inexperienced in international transactions, Rosenblatt relied heavily on Hirsch's assurances that a letter of credit was a normal incident to this sort of agreement, as indeed in the usual run of transactions it would be. Julius Hirsch in fact testified that he told Rosenblatt that the letter was only "a mere mechanical situation." The letter sought by Hirsch y Cia., however, was clearly out of the ordinary. Under the letter, as requested by Hirsch, part of Rosenblatt's payments would be payable in Buenos Aires and the rest in New York. Sufficient dollars would be received in Buenos Aires and converted to pesos at the official rate to satisfy the minimum index price set by the Argentinian government, while the rest were to be exchanged illegally outside Argentina at a much more favorable rate.[3]
 
 
 6
 It is clear from the record that Rosenblatt gave little thought to the letter of credit before sending the cable on May 5. Hirsch raised the question again on that day, but Rosenblatt, anxious to send the cable, replied that this could be discussed later, when "we come to the mechanics of the deal." At some point, however, Rosenblatt would have realized he needed an informed appraisal of his position; undoubtedly he would have made inquiries at his bank before purchasing the letter. The bank certainly would have warned him that, far from entering into the usual sort of collateral credit transaction, he was exposing himself to the possibility of penal liability under Argentinian law for conspiring to evade currency regulations. Indeed, it is apparent from the record that one of the reasons he refused to go through with the deal was his accountant's doubts about the letter.
 
 
 7
 Certainly, it is the rule that in the absence of fraud or deceit, a party is bound by his acceptance of a term even if his acquiescence is naive and uninformed. But considering all the circumstances of this case — the unusual nature of the letter proposed by Hirsch y Cia., the role played by Julius Hirsch as a good faith but misleading adviser, the virtual certainty that Rosenblatt would have discovered the irregularity of Hirsch's proposals — it cannot be said that there was a meeting of the minds on this term when Rosenblatt had no understanding of what he was accepting. See Euclid Engineering Corp. v. Illinois Power Co., 79 Ill.App.2d 145, 223 N.E.2d 409 (1967).
 
 
 8
 Nor for similar reasons can it be said that the parties intended to be bound despite the open term. The letter of credit cannot be treated as merely a collateral or ancillary matter. As Judge Weinstein noted, Hirsch y Cia.'s profit in this transaction would flow almost entirely from the currency manipulation which in turn depended on a letter of credit conforming to Hirsch's plans. If on the advice of his banker Rosenblatt had balked, it is more than likely that Hirsch y Cia. would have had no interest in consummating the agreement. With the details of the financial arrangement so crucial, Judge Weinstein correctly found that in most unusual circumstances of this case, it could not be said that an agreement had been reached by the parties until Rosenblatt, disabused of his naivete, had made an informed acceptance of the term. Without such an acceptance, it cannot be said that either Hirsch or Rosenblatt intended to be bound.
 
 
 9
 Judgment affirmed.
 
 
 
 Notes:
 
 
 *
 Sitting by designation
 
 
 [1]
 One hank of casing is obtained from about four and one-half sheep
 
 
 [2]
 Section 2-204 provides, in pertinent part:
 (3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.
 Although Judge Weinstein held in a supplemental finding that there was a reasonably certain basis for giving an appropriate remedy, he properly concluded that this section requires an independent finding that the parties intended to be bound before the contract can be enforced.
 
 
 [3]
 Fortunately we need not for purposes of this decision pursue the details of the plan further. As Julius Hirsch, president of the plaintiff, aptly testified in his deposition, "It is extremely hard for somebody to follow this, not being an Argentinian."