**INTERSTATE INDUSTRIES, INC.,**
**Plaintiff-Appellee,**

v.

**BARCLAY INDUSTRIES, INC.,**
**Defendant-Appellant.**

**No. 75–2081.**

United States Court of Appeals,
Seventh Circuit.

Argued June 1, 1976.

Decided Aug. 24, 1976.

Stephen W. Terry, Jr., Indianapolis, Ind., for defendant-appellant.

Samuel S. Thompson, Elkhart, Ind., for plaintiff-appellee.

Before PELL, SPRECHER and BAUER, Circuit Judges.

SPRECHER, Circuit Judge.

The sole question presented by this interlocutory appeal is whether the district court had personal jurisdiction over the defendant.

I

This diversity action was commenced by Interstate Industries, Inc. (Interstate), plaintiff-appellee, to recover damages from Barclay Industries, Inc. (Barclay), defendant-appellant, for breach of an alleged contract.

The pleadings and affidavits reveal that Interstate is an Illinois corporation whose principal place of business is located in Illinois. Interstate is admitted to do business in Indiana and has a facility in Michigan City, Indiana. Barclay is a Delaware corporation with its principal place of business and manufacturing plant in Lodi, New Jersey. Barclay is not admitted to do business, nor does it have property, offices, warehouses, employees or agents in Indiana. In addition, Barclay does not advertise, maintain a bank account, or telephone in Indiana.

Over a five year period Interstate was involved in numerous business transactions with Barclay in which goods manufactured by Barclay were delivered in Interstate's facility in Michigan City, Indiana. On August 23, 1973, Barclay sent a letter from its offices in Lodi, New Jersey advising Interstate that it would be able to manufacture fiberglass panels in accordance with certain specified standards. The letter included the prices Barclay would charge for manufacturing the panels and expressly stated that the "price quotation is based on orders of 75,000 sq. ft. or more (truckload quantities) freight prepaid. Order less than 75,000 sq. ft. add $.01/sq. ft., F.O.B. Lodi." In November, Interstate mailed two purchase orders to Barclay's New Jersey office with "F.O.B. Delvd." notations in the upper right hand corners. On January 16, 1974, Barclay sent a letter from its New Jersey office informing Interstate that it would be unable to provide the panels requested in the purchase orders.

In April 1975, Interstate filed a complaint against Barclay for breach of contract in the United States District Court for the Northern District of Indiana basing subject matter jurisdiction upon diversity of citizenship. Process was served on Barclay by certified mail at Lodi, New Jersey.

Barclay filed a motion to dismiss the complaint or in the alternative to quash the return of service on the ground that the court lacked personal jurisdiction over Barclay. On August 15, 1975, the motion was denied. Barclay then filed a motion requesting the district court to reconsider its August order or to grant Barclay permission to take an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[1] On October 3, 1975, the district court denied Barclay's motion to reconsider the August order but granted it permission to file an interlocutory appeal. Shortly thereafter, by order of this court, Barclay was permitted to appeal the October order of the district court.

1. Section 1292(b) provides:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

## II

We shall first review the order and memorandum of August 15, 1975 denying Barclay's motion to dismiss or in the alternative quash service of the summons. The district court utilized Indiana Trial Rule 4.4 to determine whether it had personal jurisdiction over Barclay. Trial Rule 4.4, in pertinent part, provides:

*(A) Acts serving as a basis for jurisdiction.* Any person or organization that is a nonresident of this state, a resident of this state who has left the state, or a person whose residence is unknown, submits to the jurisdiction of the courts of this state as to any action arising from the following acts committed by him or his agent:

(1) doing any business in this state;

\* \* \* \* \* \*

(4) having supplied or contracted to supply services rendered or to be rendered or goods or materials furnished or to be furnished in this state.

After reviewing the pleadings and affidavits, the district court found that Interstate's complaint alleged the existence of a contract "to supply . . . goods or materials to be furnished . . ." in Indiana. Thus, the court concluded that it had personal jurisdiction over Barclay pursuant to Trial Rule 4.4(A)(1).

Furthermore, the court reasoned that since Barclay had sufficient minimum contacts with Indiana, exercising personal jurisdiction would not violate the due process clause of the Fourteenth Amendment. In response to Barclay's motion to reconsider, the district court in October 1975 found that a "destination" contract existed to supply goods or materials to be furnished in Indiana. The court reaffirmed its earlier decision regarding Barclay's "minimum contacts" with Indiana. Interstate urges us to affirm the decisions of the district court. Moreover, it contends that Barclay was doing business within Indiana thereby bringing it within the purview of Trial Rule 4.4(A)(1).

In order to decide whether the district court had personal jurisdiction over the defendant, we must consider whether the correspondence between the parties constituted an enforceable contract to deliver goods in Indiana.

According to Section 2–204 of the Uniform Commercial Code:

(1) A contract for sale of goods may be made in any manner sufficient to *show agreement*, including conduct by both parties which recognizes the existence of such a contract.

(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if *the parties have intended to make a contract* and there is a reasonably certain basis for giving an appropriate remedy. (Citations omitted, emphasis added.)[2]

To form a contract then, it is necessary to show agreement or a meeting of the minds. Restatement of Contracts § 20 (1932), in part provides:

A manifestation of mutual assent by the parties to an informal contract is essential to its formation and the acts by which such assent is manifested must be done with the intent to do those acts;

. . .

As the Illinois Appellate Court pointed out in *Euclid Engineering Corp. v. Illinois Power Co.*, 79 Ill.App.2d 145, 223 N.E.2d 409, 413 (1967):

The law is well settled that in order for a contract to come into being, there must be a meeting of minds of the parties to the contract. . . . We believe the rule to be well stated in I.L.P., Vol. 12, Contracts, § 31, as follows:

**2.** It should be noted that The Uniform Commercial Code has been adopted in New Jersey as well as Indiana.

"One of the essential elements for the formation of a contract, other than a contract implied in law or quasi contract, is a manifestation of assent by the parties to the terms thereof. It is essential that both parties assent to the same thing in the same sense and that their minds meet on the essential terms and conditions."

*See* 1 Williston Sales § 7–2 (4th ed. 1973).

The first step toward mutual assent in the formation of a contract is an offer by one of the parties. As the Restatement of Contracts § 22 (1932) states:

The manifestation of mutual assent almost invariably takes the form of an offer or proposal by one party accepted by the other party or parties.

An offer is defined as "a promise which is in its terms conditional upon an act, forbearance or return promise being given in exchange for the promise or its performance." Restatement of Contracts § 24 (1932).

In the instant case the district court characterized Barclay's August letter which informed Interstate of the cost of manufacturing the fiberglass panels as an offer.[3] Because the Uniform Commercial Code provides no guidelines as to when a communication will constitute an offer, we must look to case law and other authorities for guidance. Specifically, we must decide whether the price quotation constituted an offer or an invitation to make an offer.

As Judge Sparks indicated in *R. E. Crummer & Co. v. Nuveen*, 147 F.2d 3, 5 (7th Cir. 1945), citing 12 Am.Jur. *Contracts* §§ 28, 29 (1938), the distinction between when a price quotation constitutes an offer rather than an invitation to make an offer is critical:

. . . A general offer must be distinguished from a general invitation to make an offer. . . . A mere quotation of price must be distinguished from an offer. From the nature of the subject, the question whether certain acts or conduct constitute a definite proposal upon which a binding contract may be predicated without any further action on the part of the person from whom it proceeds or a mere preliminary step which is not susceptible, without further action by such party, of being converted into a binding contract depends upon the nature of the particular acts or conduct in question and the circumstances attending the transaction. It is impossible to formulate a general principle or criterion for its determination. Accordingly, whether a communication naming a price is a quotation or an offer depends upon the intention of the owner as it is manifested by the facts and circumstances of each particular case. . . .

After careful consideration of an oral price quotation, made by a subcontractor to a contractor for the purpose of making a bid, the court in *Thos. J. Sheehan Co. v. Crane Co.*, 418 F.2d 642, 644–646 (8th Cir. 1969), observed:

In order to hold that the parties entered into a contract to buy and sell at the

---

3. The letter essentially provides:

"August 23, 1973

"Mr. Bob Koelling
Interstate Industries, Inc.
Thomas & Fairfield Avenues
Michigan City, Indiana 46360
Dear Mr. Koelling:
"In connection with the G.S.A. Contract Solicitation # 10054 dated August 14, 1973, we are pleased to advise you that we can meet the specifications called for for the plastic panels as specified on Page 10 as amended by Amendment # 1.

"Barclite Fire Retardant Reinforced Fiberglass Panels-Flame Spread not exceeding 25 and not exceeding 150 for Smoke Development-G.S.A.

special color Green smooth two sides in the following sizes.

| Federal Stock No. | Size | Sq. Ft. Per Piece | Price Per Sq. Ft. | Price Per Piece |
|---|---|---|---|---|
| 7195–647–2115 | 26¾" × 15¾" | 2.926 | $ .44 | $1.287 |
| 7195–647–2116 | 26¾" × 33¾" | 6.270 | .44 | 2.759 |
| 7195–647–2117 | 26¾" × 57¾" | 10.728 | .44 | 4.720 |
| 7195–647–2118 | 26¾" × 65⅔" | 12.199 | .44 | 5.368 |

"This price quotation is based on orders of 75,000 sq. ft. or more (truckload quantities) freight prepaid. Orders less than 75,000 sq. ft. add $.01/sq. ft., F.O.B. Lodi.
Very truly yours,
BARCLAY INDUSTRIES, INC.
/s/ Jules R. Raye
Sales Manager"

[quoted] prices, there must be evidence of an offer by . . . [the supplier] inviting an acceptance at those prices. Such an offer must have manifested a present intention of a promise to sell to . . . [the subcontractor] at the prices indicated. We think it clear that the . . . [supplier's] oral quotation . . manifested only a future intention to sell and thereby its quotation constituted only an invitation to . . . [the subcontractor] to make an offer. The oral quotation lacked the definiteness required under basic principles of contract law in order to constitute an offer. . . . [N]othing was stated by the defendant or plaintiff as to (1) the time in which plaintiff had to accept the 'offer,' (2) the quantity of copper tubing, fittings, or other supplies to be ordered, (3) the terms of payment or (4) the time when . . . [the supplier] promised to perform. (Citation omitted.)

\* \* \* \* \* \*

*Prices and price factors quoted by suppliers to contractors for the purposes of aiding contractors to make bid estimates, without more specific terms, do not obligate the supplier to comply with any purchase order upon whatever terms and conditions the contractor may choose to offer at some undetermined date in the future.* . . . (Emphasis added.)

\* \*. \* \* \* \*

It is axiomatic that an enforceable contract requires a meeting of the minds of the parties and a mutuality of obligation. It is clear that at the time of . . . [the subcontractor's] written purchase order neither of these existed. . . . [The supplier's] oral communication . . . merely quoted prices preliminary to entering into an actual contract of sale.

Citing Williston on Contracts, the court continued:

'[I]f goods are advertised for sale at a certain price, it is not an offer, and no contract is formed by the statement of an intending purchaser that he will take a specified quantity of the goods at that price. The construction is rather favored that such an advertisement is a mere invitation to enter into a bargain rather than an offer. *So a published price list is not an offer to sell the goods listed at the published prices. Even where the parties are dealing exclusively with one another by private letters or telegrams, or by oral conversation, the same question may arise; and language that at first sight may seem an offer may be found merely preliminary in its character.'* [Court's emphasis.] 1 Williston, Contracts § 27, p. 62 (3d ed. 1957).

Similarly, in *Robert Gordon, Inc. v. Ingersoll-Rand Co.,* 117 F.2d 654 (7th Cir. 1941), we held that a quotation letter did not constitute an offer. These cases are closely aligned with the principals and comments enumerated in Restatement of Contracts § 25 (1932):

If from a promise, or manifestation of intention, or from the circumstances existing at the time, the person to whom the promise or manifestation is addressed knows or has reason to know that the person making it does not intend it as an expression of his fixed purpose until he has given a further expression of assent, he has not made an offer.

\* \* \* \* \* \*

It is often difficult to draw an exact line between offers and negotiations preliminary thereto. It is common for one who wishes to make a bargain to try to induce the other party to the intended transaction to make the definite offer, he himself suggesting with more or less definiteness the nature of the contract he is willing to enter into. Besides any direct language indicating an intent to defer the formation of a contract, the definiteness or indefiniteness of the words used in opening the negotiation must be considered, as well as the usages of business,

and indeed all accompanying circumstances. (Comment a.)

\* \* \* \* \* \*

A writes to B, "I can quote you flour at $5 a barrel in carload lots." This is not an offer. The word "quote" and the incompleteness of the terms indicate that the writer is simply naming a current price which he is demanding. (Illustration 2.)

It is clear that an offer must be "sufficiently certain to enable a court to understand what is asked for, and what consideration is to mature the promise." *Oedekerk v. Muncie Gear Works*, 179 F.2d 821, 824 (7th Cir. 1950).

With these principles in mind, we turn to Barclay's letter containing the price quotations. It is not disputed that the letter: (1) advised Interstate of the availability; (2) specifically referred to its contents as a "price quotation"; (3) contained no language which indicated that an offer was being made; and (4) failed to mention the quantity, the time of delivery or payment terms. Under these circumstances, we are compelled to find that Barclay's letter did not constitute an offer. Consequently, the contract to supply goods to be furnished in Indiana that was alleged in Interstate's complaint did not exist and there was no basis for personal jurisdiction over the defendant. Nor are we persuaded by plaintiff's assertion that the court had personal jurisdiction over the defendant because it was "doing business" in Indiana. Because the district court did not find in either of its orders or memoranda that jurisdiction over Barclay could be maintained pursuant to Trial Rule 4.4(A)(1), but rather focused on the provisions concerning "goods to be supplied in the state," that question is not before the court. Thus, we shall not give further consideration to this issue.

Finally, having decided that the court lacked jurisdiction over the defendant, the issue of due process has become moot.

Accordingly, the judgment of the district court is vacated and remanded to the district court for further proceedings consistent with this opinion.