J. BARANELLO & SONS, Plaintiff,

v.

HAUSMANN INDUSTRIES, INC., Defendant.

77 C 2294.

United States District Court, E. D. New York.

March 7, 1980.

Robert D. Clark, Brooklyn, N. Y., for plaintiff.

Carro, Spanbock, Londin, Fass & Geller, New York City by Jerome J. Londin, Mark Budoff, New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This action arises out of an alleged contract for the fabrication and delivery of wardrobe units. Plaintiff claims in its complaint that defendant, a New Jersey corporation, submitted a bid to it for the work, which it relied on in submitting its own bid for award of a public works contract by the Facilities Development Corporation of the State of New York. Plaintiff succeeded in obtaining the award of the general contract but found itself in a dispute with defendant

concerning the nature of their agreement, if any. This action for breach of contract followed and is now before the court on defendant's motion to dismiss the complaint on numerous grounds pursuant to Rule 12(b)(1), (2), (3), (5) and (6), F.R.Civ.P.

■ At the threshold, of course, the court must consider defendant's contention that the court lacks personal jurisdiction over it and thus that the action must be dismissed pursuant to Rule 12(b)(2) and (5), F.R.Civ.P.[1] Since service on defendant was made at an address in New Jersey, the validity of personal service of the summons and hence *in personam* jurisdiction must be tested by reference to the law of the State in which the district court sits. Rules 4(d)(7) and (e), F.R.Civ.P. The applicable sections of the New York Civil Practice Laws and Rules ("CPLR") are 301 and 302. Under § 301, courts sitting in New York possess power to subject foreign parties to personal jurisdiction if those parties are "doing business" in New York. Thus, for causes of action that may or may not be related to business actually conducted in New York, jurisdiction over the person is acquired only if that person is doing business in New York in the traditional sense, that is, "not occasionally or casually, but with a fair measure of permanence and continuity." *Tauza v. Susquehanna Coal Co.*, 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917). See also *Furman v. General Dynamics Corp.*, 377 F.Supp. 37, 41 (S.D.N.Y. 1974). Plaintiff has the burden of proving defendant's activities meet the threshold for assertion of *in personam* jurisdiction over it. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5 Cir. 1974); *Oswalt Industries, Inc. v. Gilmore*, 297 F.Supp. 307 (D.Kan.1969); *Boser v. Burdick*, 62 A.D.2d 1134, 404 N.Y.S.2d 187, 188 (4th Dept. 1978); *Ziperman v. Frontier Hotel of Las Vegas*, 50 A.D.2d 581, 374 N.Y.S.2d 697, 700 (2d Dept. 1975).

Plaintiff, in opposition, relies on the following allegations to meet its burden of pleading jurisdiction. It claims that defendant sells up to $250,000 of hospital equipment annually through a "formal distribution" chain consisting of 120 to 150 dealers in New York State. These dealers are alleged to generate approximately 15% of the defendant's hospital equipment sales, which constitute approximately 75% of defendant's entire business. They are also alleged to carry defendant's line, catalogues, floor and display samples and to order from defendant on a continuous basis from a catalogue. Plaintiff further claims defendant employs a commission agent, Sales Direction, Inc., ("Sales Direction"), which works under its sales manager and assists with proposals made to contractors on furniture primarily for governmental facilities. Finally, it is contended that defendant sells hospital equipment directly to governmental agencies in New York on a competitive bid basis and makes deliveries directly to the hospitals. It also delivers its furniture to New York facilities through contractors under State contract directly to facilities in the State.

■ Viewing the pleadings and affidavits in the light most favorable to the plaintiff, we are constrained to disagree with plaintiff's contention that these allegations, assumed true for these purposes, support jurisdiction under § 301. See *Ghazoul v. International Management Services, Inc.*, 398 F.Supp. 307 (S.D.N.Y.1975). Turning first to plaintiff's contention that the presence in New York of authorized dealers who sell

1. Federal jurisdiction is premised on diversity of citizenship. 28 U.S.C. § 1332. As mentioned above, defendant is a New Jersey corporation; plaintiff is a New York partnership. Initially, defendant contended plaintiff's jurisdictional allegations were also defective on the ground that the face of the complaint failed to reveal the citizenship of the partnership, which for diversity purposes means each State of which a general partner is a citizen. See *Lewis v. Odell*, 503 F.2d 445, 446 (2 Cir. 1974); *Woodward v. D. H. Overmyer Co.*, 428 F.2d 880, 883 (2 Cir. 1970), *cert. denied*, 400 U.S. 993, 91 S.Ct. 460, 27 L.Ed.2d 441 (1971). Plaintiff's attorney's affidavit in opposition to this motion states that each of the general partners of the partnership is domiciled in the State of New York and thus apparently satisfies the pleading requirements for subject matter jurisdiction. *Land v. Dollar*, 330 U.S. 731, 735, 67 S.Ct. 1009, 1010, 91 L.Ed. 1209 (1946); *Walden v. Elrod*, 72 F.R.D. 5, 17 (W.D.Okl.1976).

defendant's products establish that defendant is doing business in New York, it is clear that the New York cases do not support that proposition. In *Delagi v. Volkswagenwerk AG*, 29 N.Y.2d 426, 328 N.Y. S.2d 653, 278 N.E.2d 895 (1972), plaintiff sought to obtain personal jurisdiction over a foreign corporation by service of a summons and complaint upon an independently owned wholesale distributor of the defendant's automobiles. The New York Court of Appeals found that the distributor's separate corporate identity and absence of any significant relationship to the defendant made it impossible to draw an inference of agency sufficient to confer jurisdiction over the "principal." Although *Delagi* involved a purchase by wholesale distributors from an importer of defendant's goods, its principle has been applied in cases involving direct sales from a manufacturer to a retailer for distribution. See, *e. g., Central School Dist. No. 2 v. C. R. Evans Corp.*, 49 Misc.2d 924, 268 N.Y.S.2d 800 (Chemung Cty.S.Ct. 1966). The federal cases are the same. See *McShan v. Omega Louis Brandt et Frere, S. A.*, 536 F.2d 516, 517–18 (2 Cir. 1976) (*Delagi* "squarely holds that sales, no matter how substantial, of a foreign manufacturer's product in New York through an independent agency do not make the foreigner amenable to suit in New York, even though the products are advertised in local media."); *Loria & Weinhaus v. H. R. Kaminsky & Sons*, 80 F.R.D. 494 (S.D.N.Y.1978).

*Frummer v. Hilton Hotels International*, 19 N.Y.2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 (1967), *cert. denied*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967), relied on by plaintiff, *does not require a different result*. That case simply held that jurisdiction over a foreign corporation had been properly obtained since it was doing business in the traditional sense under § 301. The close relationship between defendant Hilton's New York subsidiary, a reservation service, and its parent corporation, and the activities in New York of the service done for the sole benefit of the foreign defendant, established the defendant's presence in New York for jurisdictional purposes. The facts of the case lend little support to this plaintiff's contention that New York dealers of defendant's products constituted a similar presence in New York. See also *Taca International Airlines S. A. v. Rolls-Royce of England, Ltd.*, 15 N.Y.2d 97, 256 N.Y.S.2d 129, 204 N.E.2d 329 (1965); *Public Administrator of Co. of N. Y. v. Royal Bank of Canada*, 19 N.Y.2d 127, 278 N.Y.S.2d 378, 224 N.E.2d 877 (1967).

■ Nor are we persuaded by plaintiff's argument that the activities of the commission agent, Sales Direction, in "following up bid proposals in the furniture line" establish defendant's presence in New York for jurisdictional purposes. Plaintiff contends that the commission agent's activities of investigating whether a quote is of interest to the bidder and attempting to obtain the bid satisfy the "solicitation plus" requirement. The record, however, unmistakably reveals that Sales Direction is a wholly independent corporation that operates on commission only terms with various manufacturers and counts defendant among its many clients. Its function insofar as defendant is concerned is to visit prospective customers to whom defendant has already made a proposal to determine the status of the customer with respect to the proposed sale. It then reports its findings to defendant's sales manager, who is located in New Jersey. Thereupon, the defendant resumes negotiations and attempts to consummate the contract for sale, if desired.

It is clear, therefore, that the role of Sales Direction is extremely limited and that it has no significant relationship with defendant. Defendant has granted Sales Direction no authority other than to investigate and report. It neither services any goods nor confirms or authorizes deals of any kind. Sales Direction is strikingly similar to the putative "agent" in *Miller v. Surf Properties, Inc.*, 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958), whose presence in New York was found to be insufficient to confer jurisdiction over a Florida based defendant alleged to be its principal.

■ In *Surf Properties*, the New York Court of Appeals ruled that mere solicita-

tion of customers and the taking of unconfirmed reservations to the Florida principal by a wholly independent agent with approximately 50 other hotel clients was insufficient evidence of the hotel's business activities in New York to sustain jurisdiction under § 301. See also *Kirkland v. Sapphire International Touring, Ltd.*, 262 F.Supp. 309 (S.D.N.Y.1966); *Sheldon Estates, Inc. v. Perkins Pancake House, Inc.*, 48 A.D.2d 936, 369 N.Y.S.2d 806 (2d Dept. 1975). *Cf. Frummer v. Hilton Hotels International, supra; Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2 Cir. 1967), *cert. denied*, 390 U.S. 996, 88 S.Ct. 1198, 20 L.Ed.2d 95 (1968); *Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 260 N.Y.S.2d 625, 208 N.E.2d 439 (1965). New York law requires that a principal exercise some dominion and control over his agent before conduct of the agent can be deemed that of the principal for purposes of jurisdiction, *DelBello v. Japanese Steak House, Inc.*, 43 A.D.2d 455, 352 N.Y.S.2d 537, 540 (4th Dept. 1974); *Hodom v. Stearns*, 32 A.D.2d 234, 301 N.Y.S.2d 146 (4th Dept. 1969), a factor clearly lacking in this case. Federal cases are in accord on this point. See *Louis Marx & Co. v. Fuji Seiko Co., Ltd.*, 453 F.Supp. 385, 390 (S.D.N.Y.1978); *Faim International Services, Inc. v. Borchert*, 395 F.Supp. 878, 880 (S.D.N.Y.1975). Thus, something more than mere solicitations by an independent agent is required to sustain an assertion of jurisdiction in these circumstances.

■ Furthermore, the mere shipment of goods into New York does not constitute doing business under § 301. See, e. g., *Kramer v. Vogl*, 17 N.Y.2d 27, 267 N.Y.S.2d 900, 215 N.E.2d 159 (1966); *Parker v. Green*, 63 A.D.2d 977, 406 N.Y.S.2d 112 (2d Dept. 1978); *Impex Metals Corp. v. Oremet Chemical Corp.*, 333 F.Supp. 771 (S.D.N.Y. 1971).

■ Finally, we have considered plaintiff's argument that defendant's participation in public bidding on governmental contracts somehow implicates principles permitting assertion of jurisdiction over it on a less strict standard than set out above. The cases cited hardly support such an exception

from the established rule, and the court declines to create one in the circumstances of this case.

■ Accordingly, since it is undisputed that defendant neither has an office in New York nor is qualified to do business here and plaintiff has failed to point to activities which alone or taken together establish that defendant was doing business here in the traditional sense, personal jurisdiction cannot be sustained under § 301. The activities of Sales Direction in New York cannot be deemed sufficiently substantial or essential to defendant to warrant a contrary conclusion.

■ Turning now to plaintiff's alternative jurisdictional basis, we note that § 302 contains a significant limitation not found in § 301. It provides that:

"As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary, or his executor or administrator, who in person or through an agent:

"1. transacts any business within the state . . .."

The cause of action thus must arise from the transaction alleged as conferring on the court the power to exercise personal jurisdiction over a nondomiciliary. *Fontanetta v. American Board of Internal Medicine*, 421 F.2d 355, 357–58 (2 Cir. 1970).

Plaintiff contends in its attorney's affidavit that defendant's sales manager visited plaintiff's New York offices on three different occasions for consultations and negotiations. It also claims that defendant solicited plaintiff's business by making a price quotation on specified furniture for a New York State facility under a public works contract and by the terms of its acknowledgments obligated itself to deliver furniture to the project site in New York. This is alleged to constitute the transaction of business in New York sufficient to confer jurisdiction on the court under § 302(a)(1).

■ While, as plaintiff correctly points out, this section of the statute has

been described as a "one transaction statute," *George Reiner & Co., Inc. v. Schwartz,* 41 N.Y.2d 648, 394 N.Y.S.2d 844, 363 N.E.2d 551 (1977); *Parke-Bernet Galleries v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970), there must be at least a showing of minimal contacts with the jurisdiction before a court can require a defendant to submit to its jurisdiction. *McKee Electric Co. v. Rauland-Borg Corp.,* 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967). In analyzing what constitutes minimal contacts, the Court of Appeals for this circuit has stated that the proper inquiry in a case such as this is "whether looking 'at the totality of defendant's activities within the forum', purposeful acts have been performed in New York by the foreign corporation in relation to the contract." *Sterling Nat. B. & T. Co. of N. Y. v. Fidelity Mtg. Invest.,* 510 F.2d 870, 873 (2 Cir. 1975), *citing Galgay v. Bulletin Company, Inc.,* 504 F.2d 1062, 1064 (2 Cir. 1974). And meaningful activity in the State sufficient to establish jurisdiction under § 302 may be found if there were substantial negotiations in the State leading to the execution of the contract. *Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87 (2 Cir. 1975). Finally, if agreement is reached on a number of essential terms of the contract and the "critical" part of the negotiations took place in New York, jurisdiction will clearly attach. *Moser v. Boatman,* 392 F.Supp. 270 (E.D.N.Y.1975); *ECC Corporation v. Slater Electric Inc.,* 336 F.Supp. 148 (E.D.N.Y.1971); *Northland Paper Co. v. Mohawk Table Co.,* 271 F.Supp. 763 (S.D.N.Y.1967).

 Applying these principles to plaintiff's unrebutted—although apparently disputed—allegations on the jurisdictional issue, the court concludes that plaintiff has met its burden of making a prima facie showing that jurisdiction is conferred by the long arm statute. See *O'Hare International Bank v. Hampton,* 437 F.2d 1173 (7 Cir. 1971), *citing United States v. Montreal Trust Company,* 358 F.2d 239 (2 Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). Unlike the case of *McKee Electric Co. v. Rauland-Borg Corp.,*

*supra,* upon which defendant places principal reliance, the quality and nature of the contacts here cannot be deemed infinitesimal in relation to the conduct at issue in this case.

In *McKee,* the foreign defendant took orders through the mail from its New York distributors, including plaintiff. For the alleged purpose of easing frictions that arose between plaintiff and various consulting engineers, defendant sent its representative into the State. When these efforts proved futile, defendant terminated plaintiff's distributorship and ceased supplying it with its products. Plaintiff's action for breach of contract followed. The New York Court of Appeals affirmed dismissal of the action for failure of jurisdiction under § 302. Applying the standards of *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1957), and *Longines-Wittnauer Watch Co. v. Barnes & Reinecke,* 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), the court held that these contacts were infinitesimal rather than minimal. In contrast, in *Longines,* the foreign defendant not only negotiated the contract and sent goods into New York but also established a nexus with New York by maintaining employees within the State to assist installation of machines it sold to plaintiff.

The instant case obviously falls somewhere between *McKee* and *Longines.* That the circumstances of this case differ entirely from those in *McKee,* however, is evident. Although it appears that much of the negotiation between the parties took place through an exchange of correspondence, it also appears, according to plaintiff's unrebutted allegations, that the initial meeting in New York between the parties on December 8, 1976, was critical in the sense that terms which formed the basis of the subsequent negotiations were established. Moreover, two subsequent meetings in the State at which, again according to plaintiff's unrebutted allegations, defendant's sales manager and plaintiff met to examine various shop drawings and compliance with the building specifications, clearly add to the substantiality of negotiations and dis-

cussions in relation to the contract or alleged contract out of which this lawsuit arises.

■ Thus, since plaintiff's allegations demonstrate that defendant's activities within New York were purposeful and meaningful when viewed in the totality of the circumstances, plaintiff has made a prima facie showing that defendant has submitted itself to the jurisdiction of this court. Should it appear at any time, however, that plaintiff is unable to support its jurisdictional allegations with competent evidence that the meetings in New York described above both occurred as alleged and involved what plaintiff claims they involved, defendant may renew its motion to dismiss for lack of personal jurisdiction. The conclusion that plaintiff has established at least threshold jurisdiction, moreover, does not relieve it from proving at trial the facts upon which jurisdiction is based by a preponderance of the evidence. *United States v. Montreal Trust Company, supra,* 358 F.2d at 242 n.4. See also *O'Hare International Bank v. Hampton, supra,* 437 F.2d at 1177 n.2.

■ Turning now to defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), F.R. Civ.P., we note that the issue here is not whether plaintiff will ultimately prevail but whether it is entitled to offer evidence in support of its claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Lipsky v. Com. United Corp.,* 551 F.2d 887, 895 (2 Cir. 1976). Therefore, all well-pleaded material allegations will be accepted as true and the complaint will be construed in favor of the complaining party, *Cruz v. Beto,* 405 U.S. 319, 323, 92 S.Ct. 1079, 1082, 31 L.Ed.2d 263 (1972); *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–1849, 23 L.Ed.2d 404 (1969), recognizing that there cannot be a dismissal unless it appears beyond doubt that plaintiff can prove no set of facts in support of its claim which would entitle it to relief, *Conely v. Gibson,* 355. U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). See generally *Scheuer v. Rhodes, supra,* 416 U.S. at 237, 94 S.Ct. at 1686. Applying these standards, we find dismissal inappropriate at this time.

■ Plaintiff alleges in its complaint that in preparing and submitting a bid on a public works contract, it relied on a bid quoted by defendant, a subcontractor, for the fabrication and delivery of a certain quantity of wardrobes. It appears that, following the alleged meeting in New York between the parties on December 8, 1976, plaintiff sent defendant a letter dated December 14, 1976 and entitled "Letter of Intent," which stated in part that "[s]ubject to the approval of the Architect, it is our intent to award the manufacture of all wardrobes for the referenced project to your firm." Plaintiff claims that on or about December 28, 1976, defendant entered into a contract by sending an acknowledgment to plaintiff's letter of intent. Thereafter, plaintiff claims the contract was modified for valuable consideration through an additional exchange of a superseding letter of intent dated April 12, 1977, which stated in part that "[a] formal contract is being prepared and will be sent to you shortly in the amount of $114,-625.00," and an acknowledgment dated April 15, 1977. Finally, plaintiff claims that defendant notified it on or about May 20, 1977, that it would not perform the contract and that defendant's failure to perform, after plaintiff demanded full performance, resulted in its being required to enter into a new agreement with another wardrobe supplier at an additional cost to plaintiff over and above plaintiff's alleged contract price with defendant.

■ Although defendant contends that neither the correspondence nor the conduct of the parties resulted in the formation of a contract, this issue strictly speaking is not before the court. Rather, as we mentioned above, the issue is solely whether plaintiff has stated a claim which entitles it to go forward with discovery and offer evidence in support of its claims.

■ It appears that, implicitly, defendant seeks to have the court treat the motion to dismiss as one for summary judgment pursuant to Rules 12(b)(6) and 56, F.R. Civ.P., and grant it judgment dismissing the complaint. While the court has indeed considered the sparse documentation presented, it is of opinion that the record is insufficiently developed to permit it to dispose of the motion as provided in Rule 56. Moreover, since neither party sought to have the motion considered as one for summary judgment nor have the parties been given notice of and reasonable opportunity to present all material made pertinent to such a motion, we consider this case, in its current posture, particularly ill-suited to summary judgment treatment. On the other hand, plaintiff has clearly stated a claim upon which relief can be granted.

Plaintiff maintains, relying on provisions of the Uniform Commercial Code adopted by both New York and New Jersey, that defendant's acknowledgments constitute "definite and seasonal expression[s] of acceptance." UCC § 2–207(1). Defendant counters primarily that both acknowledgments contain alterations which operate as counterproposals and thus the acknowledgments could not be deemed acceptances. It cites a First Circuit case, *Roto-Lith, Ltd. v. F. P. Bartlett & Co.*, 297 F.2d 497 (1 Cir. 1962), in support of its position. The citation only points to the difficulty of deciding a motion for summary judgment on the present record.

The offeree's acceptance in *Roto-Lith* contained a provision which eliminated its obligation to warrant the goods sold to the plaintiff. The court found this provision was a significant and material alteration of the offer. It stated that as a matter of "practical construction" of the Massachusetts version of § 2–207(1), which is identical to the provisions in both New York and New Jersey law, the statute must be construed as meaning that "a response which states a condition materially altering the obligation solely to the disadvantage of the offerer is an 'acceptance * * * expressly * * * conditional on assent to the additional * * * terms.'" 297 F.2d at 500. Since the assent of the offeror was evidenced by its receipt and use of the goods, the court held it bound by the terms of the contract suggested by the offeree.

The basis for the decision appears to be that, while ordinarily a definite and seasonable expression of acceptance will operate as such under § 2–207(1) despite the inclusion of additional or different terms unless such acceptance is *expressly* conditioned upon the assent of the offeror to those terms, a court may infer a requirement of further assent when additional or different terms "materially alter" the proposed agreement. Whether defendant's contentions that the acknowledgments here contained such material alterations in the offer can withstand close scrutiny must await further development of the record.

■ Moreover, there is the possibility that UCC § 2–204(1) may be applicable in this action based on plaintiff's arguments that the conduct of the parties is further evidence that they entered into a binding contract. That section states "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." See *Luis Hirsch y Cia Sociedad Anonima v. Rosenblatt Casing Co.*, 418 F.2d 1300 (2 Cir. 1969). Here, the spare record in the case shows that both parties engaged in extensive actions in relation to the contract after each round of correspondence. Apparently, for example, defendant made certain efforts to comply with the terms of some agreement by submitting various shop drawings and plans to plaintiff for review. Moreover, defendant appears to have presented certain samples for the approval of the architect whose role in the contract is alleged by defendant to be critical. Since the record reveals the significance neither of defendant's conduct nor of the architect's role in the transactions, further development of the record is also required before decision could be made on this ground, if applicable.

Accordingly, defendant's motion to dismiss the complaint is denied in all respects. Counsel for the parties are directed to appear before the court on March 27, 1980, at 9:30 a. m. to complete a pre-trial scheduling order so that the action can proceed to resolution without further delay.

SO ORDERED.

