**David REGALADO et al., Plaintiffs,**

v.

**Donald A. JOHNSON, etc., et al., Defendants.**

**No. 75 C 4345.**

United States District Court, D. Illinois, E. D.

Aug. 3, 1978.

Sidney B. Chesnin, John M. Bouman, Joel D. Stein, Uptown Neighborhood Legal Services, Chicago, Ill., for plaintiffs.

Herbert Lee Caplan, Asst. Atty. Gen., Chicago, Ill., for defendants.

Memorandum

LEIGHTON, District Judge.

This civil action was brought by four applicants for Illinois unemployment compensation, on their behalf and on behalf of all others who were eligible for unemployment compensation but had not received their statutory benefits because of alleged

unreasonable delays in the replacement of checks mailed but never received by plaintiffs or members of the class. The parties amicably settled their controversy by a consent order. A short time after it was approved by the court, plaintiffs made a motion in which they alleged that their claims were asserted under 42 U.S.C. § 1983; that they prevailed in the case, the consent order having resolved it in their favor; therefore, they asked for an award of reasonable attorney's fees and costs pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.

Defendants responded with a motion of their own asking this court to strike and deny plaintiffs' request for fees and costs, or in the alternative that the consent order be vacated. In support of their motion they alleged that settlement discussions were entered into with plaintiffs in order to conserve state resources, avoid the expense of litigation, with the understanding that neither party would acknowledge liability; that the consent order represented their entire agreement, with no provision for attorney's fees and costs; that plaintiffs' motion for attorney's fees and costs is an attempt to alter the agreement represented by the consent order; that plaintiffs are not entitled to attorney's fees or costs from defendants because they did not prevail in this suit as required by 42 U.S.C. § 1988; and that, in addition to statutory and constitutional reasons barring recovery of attorney's fees and costs from defendants, there is the fact that plaintiffs were represented in these proceedings by attorneys who were on the staff of a publicly funded legal services organization. Therefore, from plaintiffs' allegations and defendants' contentions, the issue presented is whether in this case the motion for attorney's fees and costs should be stricken; or in the alternative, whether the consent order entered into by the parties should be vacated.

## I.

David Regalado, Gerald Moore, Linda Berns, and David Taylor, filed this suit on December 22, 1975 against defendants Donald A. Johnson, Director of the Illinois Department of Labor; I. Lawrence Richardson, Administrator of the Illinois Bureau of Employment Security; and Robert Haughey, Commissioner of the Illinois Division of Unemployment Insurance. They asked and were granted leave to proceed *in forma pauperis*. The lawyers representing them were from the Legal Assistance Foundation of Chicago, a publicly funded legal services organization. In their complaint, plaintiffs alleged that they and a large class[1] of persons similarly situated were found by defendants to be eligible for Illinois unemployment compensation but did not receive those benefits because replacement of checks sent but lost in the mails had been unreasonably delayed by regulations for which defendants were responsible; and that defendants' administration of their regulations governing replacement of lost checks had the effect of depriving many persons of benefits granted them by state and federal laws, and deprived plaintiffs, and members of the class, of rights guaranteed by the Fourteenth Amendment to the Constitution of the United States.

They prayed for the convening of a three-judge district court to determine the controversy between the parties; for the certification of a class and the maintenance of this suit as a class action; for a judgment declaring that federal law requires all persons in Illinois whose unemployment benefit checks have been mailed but not received be given a replacement check within 14 days after notification to the Illinois Division of Unemployment Insurance; for a judgment declaring that plaintiffs' rights under 42 U.S.C. §§ 503(a)(1) and 1983, the due process and equal protection clauses of the Fourteenth Amendment, have been violated by the actions of defendants about which plaintiffs complain; for preliminary and permanent injunctive relief to prevent defendants from failing to replace unem-

1. The size of the class in this case is substantial. For example, as of April, 1977, approximately 3800 check replacement claims had been pending for more than 14 days, more than 2000 for a period longer than 30 days.

ployment compensation checks mailed to plaintiffs and members of the class but never received by them, the replacement to be made within 14 days after notification by the intended recipients and the signing of a lost check affidavit; and for allowance to plaintiffs of their costs and reasonable attorney's fees, and such other relief as may be equitable, just and proper.

Less than 30 days after filing their suit, plaintiffs moved for certification of the class. Defendants opposed the grant of this relief. The class was later certified. Plaintiff moved for the convening of a three-judge court. This was opposed by defendants. On April 16, 1976, defendants answered the complaint, denying its material allegations and disclaiming any knowledge that checks had been mailed to plaintiffs and members of the class, not received by them, and not replaced by defendants as alleged in the complaint. As part of their answer, defendants interposed three affirmative defenses.

Thereafter, they moved for summary judgment alleging that no material issues of fact were framed by the pleadings; that the issue before the court was a legal one, that is: whether an unemployment benefit check, issued pursuant to Ill.Rev.Stat. ch. 48, § 300, *et seq.* (1975), and allegedly not received by a claimant, must be replaced within 14 days after the Illinois Department of Labor is notified of the non-receipt. The court set a schedule for the parties to file their briefs. At the same time, defendants moved for an order staying discovery. The motion was denied. Then on August 9, 1977, discovery having proceeded, plaintiffs filed their motion for a summary judgment. A briefing schedule was ordered; and the court announced that on October 28, 1977 it would rule on what had developed into cross-motions for summary judgment, the parties to be notified by mail.

However, before plaintiffs filed their motion, in fact during the month of May, a lawyer for them contacted the Illinois assistant attorney general who was representing defendants in the case and suggested the possibility of a settlement. On June 23, 1977, the lawyer wrote a letter describing the settlement he was proposing. He called attention to a disposition made of a Kentucky case, like the one at bar, where it was "held that the plaintiffs were entitled to attorney's fees, which we would ask the court to award in our case also." Defendants did not accept the offer of settlement.

On September 27, 1977, there was a meeting in the offices of the Illinois Division of Unemployment Insurance attended by several responsible officials. The following day the lawyer representing plaintiffs wrote to Mr. Les Kuczynski, Chief of Adjudication, Illinois Division of Unemployment Insurance, stating the terms under which this suit could be settled. On the same day, Mr. Kuczynski replied telling the lawyer "that on the basis of the terms of your letter of September 28, 1977, we have an agreement in principle to enter a consent order in the case of *Regalado vs. Johnson.*" The subject of attorney's fees and costs was not mentioned either in the discussions with the state officials, or in the letters exchanged by the parties. Two days after receiving the letter from Mr. Kuczynski, the lawyers for plaintiffs moved this court for an order allowing the parties to withdraw their cross-motions for summary judgment, vacate the briefing schedule, the ruling date, and allow them to submit their agreement for the court's approval on or before October 28, 1977. The consent order was presented, approved and entered on December 2, 1977.

It contained four introductory paragraphs and eleven that stated the agreement of the parties. The documents that would be used to solve the problem of delay in replacing the missing unemployment compensation checks were defined in one of the introductory paragraphs. Then in the dispositive portion of the order, defendants agreed that immediately on being requested, they would give every claimant a notice in the form to which the parties had agreed so that replacement of a lost check could be initiated. They consented to allow claimants for missing compensation checks to sign tracers at one of the local unemploy-

ment offices seven days after such a check had been issued. Defendants agreed to the requirement that within 15 days after a claimant signs a tracer at a local unemployment office, they would either replace the check or mail the claimant a notice along with a photo-copy showing that the check in question had been cashed. They agreed that when a claimant responds to a notice showing the missing check had been cashed, they would immediately allow the claimant to sign an affidavit of non-endorsement at any local unemployment compensation office; and thereafter, within 15 days, the check would either be replaced, or a decision would be made whether to hold a hearing concerning its endorsement. In the case where defendants decide to hold a hearing, they agreed that within 30 days after the claimant signed a non-endorsement affidavit, a hearing would be held, the check replaced, or the claimant notified that replacement was not going to be made.

Defendant also consented that counsel for plaintiffs, under certain circumstances, could move for an order allowing them reasonable access, during defendants' office hours, to the books and records dealing with replacement of missing unemployment checks, including the right of counsel to interview officers and employees of defendants who had knowledge of the subject. The consent order imposed on defendants the obligation of furnishing plaintiffs' attorneys with all official bulletins, manuals, releases, memoranda, and circulars relating to the subject about which the parties had agreed. And for a period of one year beginning February 1, 1978, defendants were required to report to the court, and to plaintiffs' attorneys, on the time-lapse that occurred in the processing of key documents and the steps involved in the new check replacement system. The consent order was to bind defendants, their officers, agents, servants, employees and successors, and those persons in active concert or participation with them who receive actual notice of it, by personal service or otherwise. It was to take effect on February 1, 1978, and the court was to retain jurisdiction in order to enforce it.

## II.

These terms expressed the understanding of the parties when they agreed to the consent order. A consent order, judgment or decree has the nature of a contract as well as that of a dispositive adjudication. See *United States v. ITT Continental Baking Co.*, 420 U.S. 223, 236–37 n. 10, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975); *Brunswick Corporation v. Chrysler Corporation*, 408 F.2d 335, 337 (7th Cir. 1969); *United States v. Am. Inst. of Real Estate Appraisers, etc.*, 442 F.Supp. 1072, 1083 (N.D.Ill.1977); *Dunaway v. Storm*, 30 Ill.App.3d 880, 884, 334 N.E.2d 825 (5th Dist. 1975). It is a contract entered into with the solemn sanction of a court; and like any other contract, it should be enforced as written. *American Tar Products Co. v. Bradner, Smith & Co.*, 238 Ill.App. 151, 158 (2d Dist. 1925). Its scope must be discerned within its four corners, and not by reference to what might satisfy the purposes of a party to it. *United States v. Armour & Co.*, 402 U.S. 673, 682, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971). One of the indispensable characteristics of a contract is mutual assent, manifested by one party to the other. S. Williston, Contracts § 22 (3d ed. 1957); see *United States v. City of Jackson, Mississippi*, 519 F.2d 1147, 1151 (5th Cir. 1975). The parties must assent to the same thing; their minds must meet on the essential terms and conditions of the contract. *Euclid Engineering Corp. v. Illinois Power Co.*, 79 Ill.App.2d 145, 152, 223 N.E.2d 409 (4th Dist. 1967).

In this case the settlement discussions between the parties did not include attorney's fees and costs; the consent order does not mention the subject. There was some allusion to it when in one letter, and on a number of occasions, a lawyer for the plaintiffs said to counsel for defendants that if this suit were not settled, and plaintiffs prevailed on the merits, they would seek an award of attorney's fees. Therefore, it is clear that there was no mutual assent by the parties on the subject of attorney's fees and costs. Nonetheless, defendants ask that the consent order be interpreted as if it

expressly denies plaintiffs the right to petition this court for fees and costs.

■ This cannot be done. A consent order, being like a contract, cannot be so interpreted that a party to it is deprived of a right or imposed an obligation to which there has been no agreement. See *United States v. Armour & Co.*, 402 U.S. at 683, 91 S.Ct. 1752. Here it was never agreed by the parties to this consent order that plaintiffs could not at least move this court for an award of attorney's fees and costs.

More importantly, defendants' motion to strike overlooks the characteristics of this litigation. Plaintiffs proceeded in this case as paupers. Most likely, they did not advance, pay, nor become obligated for the costs of this suit. They were represented by lawyers from a publicly funded legal service corporation. Therefore, they did not pay nor become obligated for fees. By this suit they sought to protect important civil rights: theirs, and those of others similarly situated with regard to state and federal statutory benefits. Everyone familiar with civil rights litigation knows that a plaintiff in such suits rarely pays attorney's fees or the costs of litigation. For these reasons, a motion for fees and costs in such a case, although made in the name of the plaintiff, is really one by the attorney. This interest in the fee makes it improper for the lawyer in a civil rights suit to inject the question of attorney's fees into the balance of settlement discussions. See *Prandini v. National Tea Co.*, 557 F.2d 1015 (3d Cir. 1977). Appropriately, then, the motion in this case was made pursuant to the provisions of the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.

The purpose of this Act is to compensate counsel who represent prevailing litigants in various claims brought pursuant to the several and different civil rights statutes enacted by Congress. *Skehan v. Bd. of Trustees of Bloomsburg State*, 436 F.Supp. 657, 666 (M.D.Pa.1977). The Act is designed to provide the familiar remedy of reasonable counsel fees to prevailing parties in suits brought to enforce the civil rights statutes which Congress has passed since 1866. See S.Rep.No. 94–1011, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Admin.News, p. 5908. And courts have been admonished not to lose sight of the fact that the overriding purpose of this Act is encouragement of the private enforcement of civil rights laws in order to fully vindicate the federal constitutional guarantees involved. *Sargeant v. Sharp*, 46 U.S. L.W. 2639 (1st Cir. May 16, 1978).

In a case to which the Act applies, it does not matter that the civil rights plaintiff is represented by lawyers from the staff of a publicly funded legal services organization. See *Reynolds v. Coomey*, 567 F.2d 1166 (1st Cir. 1978); *Rodriguez v. Taylor*, 569 F.2d 1231, 1245 (3d Cir. 1977); compare *Equal Employment Opportunity Commission v. Enterprise Ass'n Steamfitters*, 542 F.2d 579, 592–93 (2d Cir. 1976), *cert. denied*, 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). Nor does it matter that the litigation is terminated in whole or in part by a consent order, judgment or decree. *Schmidt v. Schubert*, 433 F.Supp. 1115, 1118 (E.D.Wis. 1977). Further, in determining whether an award should be made under the Act, it is irrelevant whether the conduct of a defendant or defendants is negligent, intentional, in good faith or bad. *Brown v. Culpepper*, 559 F.2d 274, 278 (5th Cir. 1977). And without violating the proscriptions of the Eleventh Amendment, an award under the Act can be assessed against state officials. *Hutto v. Finney*, —— U.S. ——, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Rainey v. Jackson State College*, 551 F.2d 672, 675–76 (5th Cir. 1977); *Rodriguez v. Jimenez*, 551 F.2d 877, 878–79 (1st Cir. 1977). It is of course essential that the movant for fees and costs be at least the attorney for the prevailing party, other than the United States. 42 U.S.C. § 1988.

Under the Civil Rights Attorney's Fees Awards Act "parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." *Brown v. Culpepper*, 559 F.2d at 277, citing S.Rep.No. 94–1011, 94th Cong. 2d Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp.

5908, 5912. Therefore, under this statute, the fact that a case is settled, and disposed by a consent order, does not preclude an award of attorney's fees and costs. *Mental Patient Civil Liberties v. Hospital Staff*, 444 F.Supp. 981, 986 (E.D.Pa.1977). And generally speaking, in construing statutes which provide for the award of attorney's fees and costs to a prevailing party, the fact that the parties in settling their dispute left unresolved the question of costs and fees does not preclude a motion to the court for an award. See *Balcaen v. Herschberger*, 415 F.Supp. 333 (E.D.Wis.1976).

 Looking at the relief plaintiffs sought in their complaint, and at the details of the consent order, this court concludes that plaintiffs were the prevailing parties in this case. They obtained the substance of the relief they sought against defendants: a method of compelling prompt replacement of Illinois unemployment compensation checks which were mailed to them but lost and not replaced in a way consistent with the statutory and constitutional rights this litigation sought to preserve. Therefore, their motion for attorney's fees and costs should not be stricken. Nor should the consent order be vacated. It would be an injustice to suspend the relief now being enjoyed by a large number of illinois citizens merely because, consistent with the Civil Rights Attorney's Fees Awards Act, a motion for an award under that statute has been filed by counsel for the plaintiffs.

For these reasons, defendants' motion to strike plaintiffs' motion for attorney's fees and costs or, alternatively, to vacate the consent order is denied. Accordingly, the motion for attorney's fees and costs will be considered by the court. Defendants are given ten (10) days from the date of this memorandum to respond to that motion and controvert, if they can, the affidavit of counsel for plaintiffs containing the schedule of services, the rate of fees, and the total expended costs they seek from this court. Thereafter, the court will determine what amount will be awarded. See *King v. Greenblatt*, 560 F.2d 1024, 1026–28 (1st Cir.

1977), *cert. denied*, —— U.S. ——, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974); compare *Morehead v. Lewis*, 432 F.Supp. 674 (N.D.Ill. 1977); *American Fed. of Government Emp., AFL–CIO v. Rosen*, 418 F.Supp. 205 (N.D. Ill.1976).

So ordered.