Frances X. FOSTER, Plaintiff,

v.

GLOUCESTER COUNTY BOARD OF CHOSEN FREEHOLDERS, et al., Defendants.

Civ. A. No. 75–1896.

United States District Court, D. New Jersey.

Nov. 21, 1978.

Philip Stephen Fuoco, Haddonfield, N.J., for plaintiff.

Eugene P. Chell, Woodbury, N.J., for defendants.

## OPINION

BROTMAN, District Judge.

### I. *Procedural History*

Plaintiff Frances Foster, a black female, brought this action pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging that her dismissal from her position as telephone operator at the Gloucester County Courthouse was motivated by racial prejudice. After extensive pretrial proceedings, the case was settled in October 1977. In a stipulation of dismissal filed November 16, 1977, the parties agreed as follows:

5. The defendant, County of Gloucester, agrees to submit for the Court's determination, the issues of whether or not the plaintiff's attorney is entitled to a counsel fee from the defendant, County of Gloucester, and if so, the amount of such fee. To this end, plaintiff's counsel shall have thirty days from the date of this Order to make the appropriate motion before the Hon. Stanley S. Brotman for such determinations.

The settlement decree also provided that the defendant County of Gloucester [hereinafter defendant] would pay Ms. Foster the sum of $7800.00 and appoint her to the position of court attendant. No admission of liability was contained in this stipulation.

On the return date of the motion for counsel fees, the court referred the matter to the Honorable Stephen M. Orlofsky, United States Magistrate, because of his familiarity with the issues in the case.[1] Following the hearing, the Magistrate entered factual findings from the bench together with a discussion of the legal issues raised in the motion. By order entered February 24, 1978, plaintiff's petition for legal fees was granted in the amount of $8451.25. Her petition for out-of-pocket expenses was granted in the amount of $459.02. The defendant filed a timely appeal from this order and oral argument was heard on April 7, 1978.

The defendant has launched a variety of attacks against the Magistrate's award. It is urged that the award is procedurally incorrect because Magistrate Orlofsky rather than I decided the motion for counsel fees

and because the Magistrate exceeded his statutory jurisdiction in entering a final order respecting counsel fees. Substantively, the defendant argues that the plaintiff is not a "prevailing party" within the meaning of either the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988 (1977 Supp.), or the attorneys' fees provision in Title VII, 42 U.S.C. § 2000e–5(k).[2] Additionally, the defendant attacks the hourly rate used in the calculation of the plaintiff's fee petition.

The plaintiff responds by claiming that the Magistrate did indeed have statutory jurisdiction to hear and finally decide the attorneys' fees question. Plaintiff contends that factual review by this court is limited to whether the findings of the Magistrate are clearly erroneous. Plaintiff, of course, argues that the findings are correct. Two conditional arguments are also raised in favor of increasing the fee award if the court decides to make a de novo determination of the motion: (1) the Magistrate failed to account for the so-called contingency factor; and (2) the Magistrate failed to include the time spent in preparing and litigating the fee petition issue in arriving at the final figure.

II. *The Power of the Magistrate to Hear Fee Petition Applications*

Defendant initially argues that the stipulation of dismissal was conditioned upon my determination of the counsel fees question. There are several answers to this argument. First, the wording of the stipulation of dismissal conditions resolution of

---

1. The Magistrate's familiarity with the issues in this case is incontrovertible. In fact, at a pretrial/settlement conference held on February 16, 1977, the parties indicated that they would have no objection if Magistrate Orlofsky sat as a fact finder or master.

2. 42 U.S.C. § 2000e–5(k) provides as follows:
   In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

42 U.S.C. § 1988 similarly provides in pertinent part as follows:
   In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

the counsel fees question only upon a determination by "the Court." When the two sentences of paragraph 5 of the stipulation are read together, it strains credulity to argue that this issue was for my determination only. Second, the judges of this district are but part of one "Court" and, just as a defendant has no right to an appearance before a particular judge, neither does a civil litigant have a vested right to a particular judge's determination of any motion. *See generally,* 28 U.S.C. § 137; *United States v. Stone,* 411 F.2d 597 (5th Cir. 1969); *United States v. Keane,* 375 F.Supp. 1201, 1203–05 (N.D.Ill.1974), *aff'd,* 522 F.2d 534 (7th Cir. 1975). Third, the parties to a litigation have no power to interfere with a district judge's statutory authority to delegate various responsibilities to Magistrates as long as the delegation is within the confines of the October 1976 Magistrate Act amendments, 28 U.S.C. § 636(b) (1976 Supp.). A quick reference to these amendments indicates that the Magistrate's jurisdiction has been expanded rather dramatically in recent years. *See, e. g., Health Corp. of America v. N.J. Dental Ass'n,* 77 F.R.D. 488 (D.N.J.1978); *see also* General Rule 40 of the Rules Governing the United States District Court for the District of New Jersey (amended June 30, 1978). Attempts to further expand their power are currently before the Congress. *See, e. g.,* S. 1613 currently under consideration by the House and Senate Judiciary Committees.

■ Defendant's argument that the Magistrate's power to enter final orders is strictly limited to pre-trial proceedings under § 636(b)(1)(A) misses the overall import of the 1976 Magistrate Act amendments and new Local Rule 40. The pre-trial matters referred to in (b)(1)(A) were not intended to circumscribe the outer limits of the Magistrate's authority. Section 636(b)(2) provides that the Magistrate may serve as a special master in certain civil actions. *See* Local Rule 40(A)(1). Section 636(b)(3) empowers a Magistrate to hear any matter not otherwise inconsistent with federal laws or the Constitution. This subsection's legislative history indicates that the district courts are not confined by the specifics of § 636(b)(1) and that Magistrates may be employed in a wide variety of situations not inconsistent with the Constitution. House Judiciary Committee, H.R.No. 94–1609 at 12, 1976 U.S. Code Cong. & Admin. News, p. 6172. Without belaboring the matter, it seems apparent to this court that the Magistrate could sit as a special master and make findings of fact which would be reviewable only under the "clearly erroneous" standard. *See* Local Rule 40(A)(1) and (26); see generally 5A J. Moore, *Federal Practice* ¶ 53.12(4) at 3008 (1977). If no special circumstances existed, the court would be inclined to review the Magistrate's opinion and order under the "clearly erroneous" standard of § 636(b)(2) and Fed. R.Civ.P. 53(e)(2).

■ However, the propriety of attorneys' fees following a settlement such as the present is a complicated and novel question which has recently been affected by several pertinent cases in this circuit. *See, e. g., Hughes v. Repko,* 578 F.2d 483 (3rd Cir. 1978); *Baughman v. Wilson Freight Forwarding Co.,* 583 F.2d 1208 (3rd Cir. 1978); *Prandini v. National Tea Co.,* 585 F.2d 47 (3rd Cir. 1978). Accordingly, the court shall treat the Magistrate's findings as a Report and Recommendation and shall exercise its ultimate prerogative to conduct a *de novo* review of the propriety of attorneys' fees. *See* 28 U.S.C. § 636(b)(1)(A); Local Rule 40(A)(10)(a); *Richardson v. Civil Service Comm.,* 449 F.Supp. 10 (S.D.N.Y.1978).

### III. *The Magistrate's Findings*

In a bench opinion rendered February 17, 1978, the Magistrate found that plaintiff was a "prevailing party" within the meaning of 42 U.S.C. § 2000e–5(k) and 42 U.S.C. § 1988 (1976 Supp.). He relied primarily on *Parker v. Matthews,* 411 F.Supp. 1059 (D.D. C.1976), *aff'd sub nom. Parker v. Califano,* 182 U.S.App.D.C. 322, 561 F.2d 320 (1977); *Foster v. Boorstin,* 182 U.S.App.D.C. 342, 551 F.2d 340 (1977); and the legislative history of the Civil Rights Attorney's Fees Awards Act of 1976. The Magistrate found that the plaintiff had received a settlement

value of $44,200.00 including the $7,800.00 cash settlement plus an anticipated yearly salary of $5,200.00 for a period of five years (until her retirement).

Regarding the amount of the award, Magistrate Orlofsky followed the reasoning of *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir. 1973) (*Lindy* I); *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102 (3rd Cir. 1976) (*Lindy* II); and *Merola v. Atlantic Richfield Co.*, 493 F.2d 292 (3rd Cir. 1974) (*Merola* I). He concluded that the hours claimed to have been spent on the case by plaintiff's attorney (110¾) and his law clerk (20) were entirely reasonable. He noted that these hourly computations were uncontested by the defendant. Respecting an hourly billing rate, the Magistrate found that Mr. Fuoco's expertise and experience in civil rights litigation together with the quality of the work performed warranted a rate of $75.00. Believing the law clerk hourly rate to be too high, the Magistrate reduced it from $10.00 to $5.00. Although the Magistrate acknowledged the possibility of adjusting the rate to account for the contingent nature of the case, he did not make an upward adjustment of the figure. As mentioned earlier, expenses were awarded in the amount of $459.02. This amount is uncontested.

IV. *Discussion of Legal Issues*

A. *The plaintiff as a "prevailing party"*

The defendant strenuously disputes that plaintiff is a "prevailing party" within the meaning of either Title VII or section 1988.[3] It is urged that a plaintiff must either be successful in court on her claim or must show some other evidence that the lawsuit vindicated her rights. *Goodall v. Mason*, 419 F.Supp. 980 (E.D.Va.1976). Defendant urges that the settlement in this case was brought about only after extensive negotia-

tions between county counsel and various defendant freeholders. Rather than a victory for plaintiff, the settlement is characterized as a nuisance settlement, catalyzed at the last minute by a fortuitous job opening at the county courthouse. Plaintiff, pointing out that Ms. Foster received a substantial aggregate of rights including a cash settlement and job tenure until the time of her anticipated retirement five years hence, casts the settlement in a different light.

The problem with this case, as is frequently the problem with litigation that settles prior to trial, is that there has been no finding of liability against, or admission of liability by, the defendant. The stipulation of dismissal mentions nothing in this regard except that "each and every defendant has denied liability in connection with the alleged claim. . . ." Nevertheless, the defendant's argument respecting the definition of "prevailing party" is too limited, as the legislative history of the 1976 Fees Act indicates:

"The phrase 'prevailing party' is not intended to be limited to the victor only after entry of a final judgment following full trial on the merits. It would also include a litigant who succeeds even if the case is concluded prior to a full evidentiary hearing before a judge or jury. If the litigation terminates by consent decree, for example, it would still be proper to award counsel fees. [citations omitted].

"A 'prevailing party' should not be penalized for seeking an out-of-court settlement, thus helping to lessen docket congestion. Similarly, after a complaint is filed, a defendant might voluntarily cease the unlawful practice. A court should still award fees even though it might conclude, as a matter of equity, that no formal relief, such as injunctive, is needed." House Judiciary Committee, Rept.No. 94–1558 (Sept. 15, 1976) at 7;

**3.** Since the suit was not litigated to a final judgment, it is impossible to conclude that one statute, as opposed to the other, applies. The language and purpose of each statute is nearly identical so it makes little difference which one is used for purposes of an award. *See* note 2, *supra*.

*see also* Senate Judiciary Committee, Rept.No. 94–1011 (June 29, 1976) at 5, 1976 U.S. Code Cong. & Admin. News, p. 5912.

The Magistrate was correct in focusing his analysis on *Parker, supra,* and *Foster v. Boorstin, supra. See also Regalado v. Johnson,* 79 F.R.D. 447 (N.D.Ill.1978); *Mental Patients Civil Liberties Proj. v. Hospital Staff,* 444 F.Supp. 981 (E.D.Pa.1977). In *Parker* the plaintiff filed a sex discrimination action claiming that she had been withheld promotion and commensurate pay increases. During the pendency of the litigation, the defendant virtually admitted liability and retroactively promoted the plaintiff with back pay. The court, while cautioning against awarding fees in nuisance settlements, sanctioned the award of attorneys' fees on the ground that the lawsuit was a "catalyst" of the benefits awarded the plaintiff. 411 F.Supp. at 1063–64. The court based its decision on a "close scrutiny of the totality of circumstances," including "whether the action was necessary and whether the party [was] successful in the discrimination claim." *Id.* In *Mental Patients, supra,* a class action suit that was settled by consent decree prior to trial, the court awarded fees on the grounds that the suit was "meritorious" and that the plaintiff achieved most of the benefits sought. The first criterion was viewed in terms of whether the suit could have survived a motion to dismiss; the second was evaluated by comparing the consent decree with the relief sought in the complaint. Similarly, in *Regalado, supra,* the court decided the propriety of counsel fees by determining whether the plaintiff obtained by consent order most of the relief sought in the complaint.

■ In this case, having examined the totality of the circumstances of the settlement, the court is drawn to the same con-

clusion as the Magistrate; the plaintiff must be considered a "prevailing party" within the meaning of the applicable fee statutes. While there has been no finding or admission of liability, it seems clear that the action would have survived a motion to dismiss or for summary judgment since disputed facts existed concerning the reasons for plaintiff's termination. *See, e. g., Goodman v. Mead Johnson,* 534 F.2d 566, 573 (3rd Cir. 1976). The suit was thus "meritorious" in the sense of *Mental Patients.* More importantly, the plaintiff secured an important bundle of rights in the settlement of this litigation. A $7,800.00 cash payment together with reinstatement at plaintiff's prior place of employment can hardly be considered a "nuisance" settlement.[4] Had the plaintiff not instituted this litigation, she would undoubtedly not be employed at this time at the Gloucester County Courthouse. Defendant's argument that plaintiff's settlement award is not a total victory can be better applied to the court's discretionary downward adjustment of that award. *See* part IV, D, *infra.*

### B. *The Lodestar*

■ This circuit has consistently held that the proper starting point for calculating the amount of counsel fees is the "lodestar" approach of *Lindy II, supra. See Hughes, supra* at 486. The lodestar is simply the hours reasonably necessary to the prosecution of the successful claim times a reasonable hourly rate. *Lindy I, supra* at 167; *Hughes, supra* at 491 (Garth, J., concurring). The defendant seeks to distinguish this case from the *Lindy* cases on the ground that a "common fund" case has policy considerations different from a civil rights action in which fees are provided by statute. While certain factors may no doubt call for different results respecting

---

4. The Magistrate concluded that the total value of the settlement to the plaintiff was $44,200.00 including an anticipated yearly salary of $5,200.00 for seven years. Of course, any calculation of plaintiff's anticipated future income should have been reduced to its present value which would reduce this $44,200.00 figure somewhat. While the defendant attacks the speculative nature of this award, virtually every future earnings damage award is similarly speculative, yet routinely employed. Moreover, defendant has contradicted its own argument by agreeing that plaintiff was not employed either prior to or after her 1973 term of employment at the Gloucester County Courthouse.

various sub-issues, *see, e. g., Prandini, supra* 585 F.2d at 53 (fee petition application), the basic lodestar computation is identical. *See Hughes, supra* (§ 1982 action).

In determining the lodestar in this case, the Magistrate basically followed the outline of *Lindy I* and its progeny. This court likewise concludes that the 110¾ hours claimed by plaintiff's attorney in the prosecution of this case is entirely consistent with the complexity of the issues involved. Forty-four hours of discovery, eighteen hours of legal research, twenty hours of court-related activity and ten hours of consultation with the client are entirely reasonable in a litigation that spanned over 1½ years and produced several discovery motions plus a summary judgment motion. Moreover, the road to ultimate recovery was a rough one because the plaintiff was faced with allegedly neutral reports which evaluated her as being incompetent in her position as telephone operator at the Gloucester County Courthouse. Finally, the defendant has voiced no objection to the number of hours claimed by plaintiff's counsel. The hours are therefore reasonable under all the circumstances.

The reasonable hourly rate was fixed by the Magistrate at $75.00. This rate was predicated primarily on Mr. Fuoco's background and experience (summarized in a resume annexed to his fee petition) as well as the quality of work which the Magistrate, based on conferences and moving papers submitted in connection with various motions, found to be excellent. Additionally, Magistrate Orlofsky considered the fee rates in comparable civil rights cases in other jurisdictions (presented in plaintiff's brief before the Magistrate) in reaching his determination.

The defendant attacks the $75.00 hourly rate on the ground that the rates of compensation for federal criminal defense lawyers are considerably lower under 18 U.S.C. § 3006A(d)(1) and that plaintiff's lawyer cannot justify such a high fee because of his low overhead costs. To begin with, what is appropriate for criminal attorneys appointed pursuant to court order is irrelevant in Title VII or § 1983 actions. *Rodriguez v. Taylor,* 569 F.2d 1231, 1249 (3rd Cir. 1977). Second, the court fails to follow the logic of defendant's "overhead" argument. The central focus of a reasonable hourly rate is the attorney's legal reputation and status as well as the quality of his work in the case. *Lindy I, supra* at 167; *Baughman, supra* 583 F.2d at 1216. The Magistrate made such findings and reached a correct conclusion. Mr. Fuoco is an experienced practitioner in the area of civil rights litigation. His prior experience includes four years of trial work in the U.S. Department of Justice, Civil Rights Division, in Washington, D. C., in addition to general trial experience in various United States Attorney's Offices. Moreover, his work in this case has been excellent as has been amply demonstrated throughout this litigation. *See Baughman, supra* at 1216. Finally, the $75.00 hourly figure is comparable to other fee awards made in similar litigation in the federal courts and equals the hourly rate charged by Mr. Fuoco on the rare occasions when he takes a case on retainer. *See* Fee Petition at 10. The hourly rate is quite reasonable under all the circumstances.[5]

## C. The "Lindy Amount"

Having determined that the Magistrate correctly calculated the lodestar for plaintiff's counsel and his law clerk ($8,451.25), the next question is whether that amount should be adjusted further to reflect either the exceptional quality of the work or the "contingency factor." This adjusted figure has been labelled the "*Lindy* amount." *See Hughes, supra* at 491 (Garth, J. concurring); *Lindy II, supra* at 112. The Magistrate, while not making a specific finding to such effect, apparently believed that the hourly rate adequately reflected the quality of the work and that a further upward adjustment was not necessary. The court agrees.

---

5. The $5.00 hourly rate used to compute the law clerk's lodestar is unchallenged on this appeal. In any event, it is entirely reasonable.

Under normal circumstances, a lodestar reflects the expertise, reputation and position of counsel. *Baughman, supra* at 1218. While the court has already commented upon counsel's work in this case, it does not feel that an additional adjustment is necessary or appropriate under the circumstances. *Id.* at 1219; *Hughes, supra* at 488.

The "contingency factor" poses another problem. This case was taken by Mr. Fuoco on a contingent fee basis. Despite defendant's argument to the contrary, the presence of a contingent fee does not eliminate the propriety of court-awarded fees. *Sargeant v. Sharpe*, 579 F.2d 645 (1st Cir. 1978); *see Rodriguez, supra* at 1247. Moreover, it seems clear to the court that plaintiff was facing substantial barriers to recovery based on reports from Bell Telephone Operator Instructors that plaintiff could not operate the telephone equipment at the courthouse. Further, an affidavit executed by the plaintiff indicates that she had considerable trouble in finding an attorney to take the case on a contingent fee basis. Prior to the entry of appearance by Mr. Fuoco, Ms. Foster was proceeding pro se. The preceding factors indicate that an upward adjustment of the lodestar would be called for if it were not for the recent warning of the Third Circuit that court fees should be increased sparingly in situations where "the lodestar as originally calculated by the district court [is] a significant amount in comparison to the amount awarded plaintiff in damages." *Baughman, supra* at 1218. In fact, the lodestar in this case exceeds the monetary damages awarded plaintiff. While it is true that plaintiff received an additional settlement in the form of her appointment as court attendant, the court feels that the policies surrounding *Baughman* and the *Lindy* cases advise against increasing the fee award due to a contingency factor.[6]

### D. The Post-Lindy Discretionary Adjustment

Having determined that the lodestar calculated by the Magistrate is correct and that the "*Lindy* amount" need not be further adjusted to account for the quality of Mr. Fuoco's work or the contingency of the case, the court must now determine whether other factors are present which weigh in favor of adjustment of the lodestar either upward or downward. *See Hughes, supra* at 492 (Garth, J., concurring); *Baughman, supra* at 1220 (Garth, J., concurring).

In this regard, the court is confronted with a most difficult issue. Although defendant's arguments have been largely misdirected toward whether plaintiff is a "prevailing party" under the various civil rights statutes, it is in the area of the "post-*Lindy* discretionary adjustment" that defendant's arguments are most telling. While there is no question that plaintiff is a "prevailing party" for purposes of counsel fees, the additional question that must be asked in this case is whether the *degree* to which a plaintiff prevails can be used as a factor in adjusting the *Lindy* amount. While the Third Circuit in *Hughes* disapproved of an automatic reduction of the lodestar based on the percentage of successful counts of the complaint, this circuit and others have indicated that the lodestar may be reduced, in the district court's discretion, to account for the "limited benefits produced by the litigation," *Hughes, supra* at 489 (Rosenn, J. concurring), the limited public purpose served by the plaintiff's award, *Id.* at 488–89 (majority op.), or the limited extent to which a plaintiff prevails in the litigation. *Adams v. Reed*, 567 F.2d 1283, 1288 (5th Cir. 1978); *see Merola v. Atlantic Richfield Co.*, 515 F.2d 165, 173 (3rd Cir. 1975) (*Merola* II); *Merola I, supra* at 298; *Lindy I, supra* at 168–69; *Sweeney v. Bd. of Trustees of*

---

6. Both *Baughman* and *Lindy I* undoubtedly reflect a judgment by the Third Circuit that counsel fees which approach or exceed a client's own recovery tend, *absent unusual circumstances*, to undermine the integrity of the legal profession. Certainly large fee awards lend "support to the sentiments of the Italian proverb that 'a lawsuit is a fruit tree planted in a lawyer's garden.'" Berger, *Court Awarded Attorneys' Fees: What is "Reasonable?"*, 126 U.Pa.L.Rev. 281, 292 (1977). In this court's opinion, the contingency factor is counterbalanced by the public policy against disproportionately large fee awards.

*Keene State College,* 569 .F.2d 169, 180 (1st Cir. 1978); *Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d 714, 718 (5th Cir. 1974); *Taylor v. Franklin Drapery Co., Inc.,* 443 F.Supp. 795, 798 (W.D.Mo.1978).

In *Hughes* Judge Rosenn discussed at length the ability of the district court to adjust the final lodestar figure to reflect the limited benefits produced from the litigation both to the public and to the plaintiff. Judge Rosenn started with the premise, followed in part IV, A, of this court's opinion, that a party is entitled to some counsel fees "regardless of whether he prevails slightly or greatly . . . ." *Hughes, supra* at 490. He then discussed the necessity of allowing the district court flexibility in adjusting the lodestar. In *Hughes,* Judge Rosenn intimated that the small jury verdict and the isolated instance of racial discrimination warranted a reduction of the lodestar. While acknowledging that a minor damage verdict might justify a large attorney's fee if the litigation affected substantial government policies, Judge Rosenn concluded that:

> . . . for the ordinary case, once a district court has fixed the "lodestar" it should not be precluded from a downward adjustment of that fee, when, in its discretion, considering the potential damages available, the amount actually recovered, and the minor nature of defendant's misconduct, the court determines that the litigation has produced minimum benefits. *See Lindy II, supra,* 540 F.2d at 112, *quoting, Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 168–69 (3d Cir. 1975) (*Merola II*) (the court may "reduce the objectively determined fee where the benefit produced does not warrant awarding the full value of the time expended"). *Hughes, supra* at 490–91.

Similarly, Judge Garth, also concurring in *Hughes,* indicated that an adjustment could be made to reflect the degree to which the substantive purposes of the Civil Rights Act were furthered. *Id.* at 492. He outlined several factors the court might consider in making this determination, including:

> [T]he importance of the constitutional right and congressional policy which has been vindicated; the number of citizens who have been benefited or whose rights have been vindicated (either as class members or through *stare decisis*); the extent of the constitutional violation which has been remedied (i. e., how widespread or pervasive was the civil rights violation); whether the attorney has successfully advanced a novel theory or interpretation; the extent to which the public interest has been served. [citation omitted]. *Id.* at 492 n. 5.

In this case, there are several factors which lead the court to conclude that the "*Lindy* amount" should be reduced to account for the limited benefits produced by the litigation. First and foremost, there has been no finding of racial discrimination on the part of the defendant or its employees either by jury verdict, consent order or stipulation of dismissal. Therefore, it is impossible to conclude that any of the substantive purposes of the Civil Rights Act have been furthered by the litigation. Moreover, this litigation can be anticipated to have very little impact on a wide range of individuals. This is not a class action and, without any finding of racial discrimination, the *stare decisis* value is nil. Although a novel theory of racial discrimination was advanced by plaintiff's counsel, it is impossible to conclude that this theory (poor job performance caused by racial discrimination) would have been convincing to a jury or judge. Additionally, while the benefits to the plaintiff are undoubtedly greater than in *Hughes,* this court cannot conclude that the plaintiff achieved nearly everything she sought in the complaint. As late as August 8, 1977, plaintiff was demanding $33,000.00 in damages together with her reinstatement as a telephone operator. She sought back salary in the amount of $20,800.00, exemplary damages of $12,000.00 and medical damages of $200.00. Her total cash settlement was $7,800.00. Furthermore, she was not reinstated at her original position as telephone operator but was given the position of court attendant. The preceding analysis is not to belittle the

accomplishments of plaintiff and her attorney. Without Mr. Fuoco, plaintiff would in all probability have received nothing out of this litigation. The personal benefits to her are large and, as her affidavit indicates, she is satisfied with the work of her lawyer. Nevertheless, in terms of the broader policies behind the Civil Rights Act and, equally as important, in terms of plaintiff's vindication on the racial discrimination claim, the court is constrained to discount the fee award to reflect plaintiff's limited success. In reducing the lodestar, the court is not unaware of the rather fine line it must draw between a "prevailing party" for *any* counsel fees and a "prevailing party" for some, but not all, counsel fees requested. The court is also mindful of the well-reasoned criticism of such a result-oriented analysis when contrasted with what some perceive as the lawyer's role in typical civil litigation. *See, e. g.,* Berger, *Court Awarded Attorney Fees: What is "Reasonable?",* 126 U.Pa.L.Rev. 281, 317–18 (1977). However, in a situation where a case is settled prior to trial without any explicit adjudication of the liability issue, it is this court's view that the trial judge must attempt to perform just such an intricate evaluation.

The final issue is how much the fee should be reduced. While it is easy to state with particularity the reasons for reducing or increasing an award, it is considerably more difficult to express an exact figure to implement such reasoning. In this regard the court is mindful of the continuing admonitions of the Third Circuit to avoid, where possible, an "across-the-board" reduction of fee awards. *See, e. g., Prandini, supra* at 51–52. Nevertheless, this case allows for no other method of handling the "post-*Lindy* discretionary adjustment." The plaintiff has been individually successful but not totally and not to the point of furthering the broad purposes of the Civil Rights Act. Considering all the factors, the

court believes that the "*Lindy* amount" should be reduced by 30%. While it is perhaps small consolation for plaintiff's attorney, such a result should not come as a surprise:

> An attorney, depending solely upon a statutory discretionary fee award, who undertakes litigation in which the potential damages are small, may run the risk that his fee will not be full compensation for his labors.
>
> *Hughes, supra* at 490 (Rosenn, J. concurring).

The risk plaintiff's attorney took in this case was especially great since there was no finding of racial discrimination upon which he could hang his attorney's fee hat.

## V. *Conclusion*

In summary, the recommendation of the Magistrate respecting the lodestar of both counsel and law clerk is adopted by the court (110.75 hours × $75.00 per hour plus 29 hours × $5.00 per hour, for a total lodestar of $8,451.25). The court finds that the "*Lindy* amount" should be the same as the lodestar. The court also finds that the "post-*Lindy* discretionary adjustment" should include a downward adjustment to 70% of the lodestar or $5,915.88. The petition for costs is granted in the full amount ($459.02). Finally, the supplemental fee petition for time spent in preparation of the fee petition and motion is granted in the amount of $412.50. *See Prandini, supra* at 53–54.[7] The appropriate order shall be entered.

---

**7.** Defendant's attorney did not contest the reasonableness of the fee petition claim but rather the propriety of any fees at all for time spent litigating the fee question. Without unduly repeating the lodestar analysis used earlier in this opinion, the court finds that the 5.5 hours expended in preparation of the fee petition and brief to be entirely reasonable in view of the complexity of the issues presented. An analysis of the $75.00 hourly rate has already been undertaken.