Carl Shoji HAMILTON, Plaintiff,

v.

Roscoe BRUCE, Sheriff, et al., Defendants.

Civ. A. No. 80–0181(H).

United States District Court, W.D. Virginia, Harrisonburg Division.

Nov. 23, 1982.

Raymond L. Clarke, Charlottesville, Va., for plaintiff.

E. Eugene Gunter, Lawrence R. Ambrogi, Commonwealth's Atty. for Frederick County, Winchester, Va., for defendants.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This matter comes on the motion of counsel for plaintiff for an allowance of attorney's fees, which motion is brought under 42 U.S.C. § 1988, on which section the jurisdiction of the court to hear and determine this matter is predicated.

Under the terms of § 1988, a first matter to be determined is whether the moving party asking for attorney's fees is the prevailing party in the litigation.

In this case, it is clear that a settlement was reached between plaintiff and at least one of the defendants, this being the defendant Elliot. However, the benefits of the settlement accrued to all defendants, and, at oral argument it was conceded that the settlement fund was paid under an insurance policy coverage which covered all of the defendants. Because the settlement agreement released all defendants, the court is not of opinion to place great weight on the fact that the "settling party", so to speak, was Mr. Elliot.

The *ad damnum* in this case, as shown in the complaint, was for the sum of $125,000, whereas the settlement figure was $6,000. Counsel for the defendants point to the great disparity between the sums set out in the *ad damnum* clause and the amount of the settlement figure, arguing vigorously that the settlement figure was agreed to by the defendants solely on an economic basis, asserting that the costs of retrieving the various witnesses now scattered throughout the penal system, and out of state in many instances, together with counsel costs, were such that it was economically a better matter to settle the case for $6,000 than to go to trial.

The court is of opinion that economic considerations practically always enter into settlement negotiations. However, it is equally apparent that there is in a successful settlement negotiation a purchase of the opportunity for an adverse result, and the court finds no basis in this case to believe that both factors were not present in the settlement reached here. Whether the two factors can be assigned arithmetic percentages to make up the 100 percent of the affirmative decision to agree to settlement is, practically speaking, impossible, but it is certainly true that both factors enter into any successful settlement negotiation. Further, the court cannot say that settlement for $6,000 is settlement for a nominal sum. Even under today's inflationary economy, $6,000 is still a substantial sum. The fact that the *ad damnum* may have been laid at a much higher figure is more than likely a reflection of the caution of the plaintiff in trying to assure a maximum verdict, in the event that the plaintiff might be successful. Such a setting of the *ad damnum* does not of necessity indicate

the view of the plaintiff as to the precise amount he will be able to prove in the way of damages. Further, it should be noted that the case involved a complaint which was filed *pro se* by Hamilton, the attorney, Mr. Clark, coming in to represent Mr. Hamilton at a later time. See, *Fluhr v. Roberts,* 463 F.Supp. 745 (D.C.Ky.1979).

Under the authority of *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Foster v. Gloucester County Board of Chosen Freeholders,* 465 F.Supp. 293 (D.C.N.J.1978) it seems obvious to the court that Mr. Hamilton must be classed as the "prevailing party" in reaching the settlement which was reached in this case.

Having reached this conclusion, the next issue for resolution deals with the discretion granted to the court under § 1988 to award a fee. The claim for fees under § 1988 has been held to be sufficiently independent of the case in which the services were rendered to permit the separate application for fees. *See White v. New Hampshire,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982); *Levin v. Parkhouse,* 484 F.Supp. 1091 (1980). Essentially, the only portion of the case in chief which is important to the determination of the issues raised by this motion for fees is to determine whether the plaintiff was "the prevailing party"; thereafter, the matter of the application for fees proceeds essentially on an independent basis.

It seems that this matter may have come to this pass principally because of a basic misunderstanding of the meaning and thrust of § 1988 on the part of counsel for both parties. While there is disagreement between the parties as to the meaning of a paragraph in the order tendered to dismiss the suit following the settlement, it is clear that that order contains a paragraph setting out a provision for the allowance of a fee. Obviously, it must have been in the minds of counsel for both parties that the question of a fee, left blank in the tendered order, was under consideration, or at least known to, counsel for each of the parties. It appears that there was considerable doubt in the minds of counsel for plaintiff and for defendants, as to the source of payment of any fee which might be awarded. Counsel for the defendants was of the belief that any such fee would be paid from the proceeds of the settlement, whereas counsel for the plaintiff was of the belief that there might be a separate fee allowed over and above the sum of the settlement, or that there might be, in the words of counsel, a "government slush fund" from which the fee might be paid. To this court's knowledge, there is no such fund, and the question of payment of the fee from the settlement proceeds rests in the sound discretion of the court, under the provisions of § 1988.

Counsel for the defendants suggests in argument that the allowance of a fee from any source other than the settlement proceeds would in fact amount to a fraud in the inducement in leading the defendants into making the settlement. Under the provisions of § 1988, it does not seem to the court that a request for fee brought under that section could in any way be construed as a fraud of any sort, whether in the inducement or otherwise. Counsel for the defendants further goes on to assert that should the court in its exercise of discretion, award a fee from some source other than the proceeds of the settlement, the court should then set aside the settlement and revert the parties to their former position and prepare them to go forward to trial.

Under the authority of *Foster, supra,* the fact that settlement has been reached is the material fact, with the question of fee to be determined collaterally to the matter of dismissing the action because of settlement. The Supreme Court's opinion in *White v. New Hampshire, supra,* indicates clearly that setting aside a settlement under circumstances remarkably similar to those in this case is not a proper action. This court declines to accept counsel's invitation to set aside the settlement and to order the case to go to trial.

A social policy sought to be effectuated by the fee allowance provision in § 1988 is to assure, to the extent feasible,

that civil rights violations are properly and adequately prosecuted. *Mid-Hudson Legal Services v. G & U., Inc.,* 578 F.2d 34 (2nd Cir.1978). It is to effectuate this policy that § 1988 vests in the court the discretion to determine a fee as a matter essentially independent of the case in which the services are rendered.

■ Counsel for the defendant Elliot asserts that the case is a frivolous case, that the issue joined on a flat denial by all defendants that any of the instances set out in the complaint ever took place, and that the simple frivolity of the complaint should militate against the award of a fee. However, the *Foster* court cites the fact that an adverse ruling on a motion to dismiss sufficiently indicates the nonfrivolous nature of the complaint. In this case, a motion to dismiss was overruled and a later motion for summary judgment was overruled. This is not to say that a renewal of these motions at a proper time might not have resulted in a different ruling, but it is to say that on the basis of the pleadings and, later, the affidavits and exhibits submitted, the case survived both motions.

■ After full consideration of the pleadings, the memoranda and argument of counsel, the court is of opinion to award to counsel of the plaintiff a fee in this case, under the discretion vested in the court by the terms of § 1988. After considering carefully the affidavit of Mr. Clark, the arguments of counsel and the other materials before the court, the court sets a fee in the amount of $1,600 for Mr. Clark, together with expenses in the amount of $112.00.

Accordingly, the court shall enter the above recited fee in the Order submitted and endorsed by plaintiff and counsel for all parties. The clerk is directed to send a certified copy of this memorandum opinion to all counsel of record in this proceeding.

## APPENDIX

### RELEASE OF LIABILITY

WHEREAS, I, CARL SHOJI HAMILTON, am the Plaintiff in that certain suit now pending in the United States District Court for the Western District of Virginia, Harrisonburg Division, Civil Action No. 80–0181(H), against Roscoe Bruce, Sheriff of Frederick County, Virginia, Michelle DeBari (being the same person as Michele DeBari), Dwayne Harman, Winfred Elliott, and the Frederick County Jail, as Defendants.

NOW, THEREFORE WITNESSETH: That for and in consideration of the sum of Six Thousand Dollars ($6,000.00), paid to me by, or on behalf of, the Defendant, Winfred Elliott, receipt of which is hereby acknowledged, I, Carl Shoji Hamilton, do hereby forever release and discharge each and all of the aforesaid Defendants, their heirs, successors, assigns, employers, superiors, or governmental agencies, bodies, or offices represented by same, from any and all claims, demands, actions or causes of action on account of any and all physical and/or mental injuries suffered by me and on account of any and all violations of my Constitutional rights, whether known, unknown, suspected, or unsuspected, resulting from or to result from my incarceration at the Winchester-Frederick County Jail, 5 North Cameron Street, Winchester, Virginia, or from otherwise being in the custody of any of the aforesaid Defendants, prior to the date of this Release, and specifically including, but not limited to, all acts of commission or omission alleged against such Defendants in the aforesaid suit.

I further specifically declare that all the aforesaid Defendants are being sued as joint tortfeasors as a result of acts of commission or omission as alleged in such suit, and I understand and intend that the payment received from, or on behalf of, the Defendant Elliott, as aforesaid, shall and does operate as a release and satisfaction of all causes of action against any and all of the above-named Defendants, their heirs, successors, assigns, employers, superiors, or governmental agencies, bodies or offices represented by same, resulting from any and all acts of commission or omission committed by same prior to the date of this Release, and constitutes good and valid consideration for same.

It is, further, understood that the aforesaid payment to me is made without any admission of liability on behalf of any of the aforesaid Defendants, who specifically deny that they are liable to me in any manner and, likewise, deny the commission or omission of any acts as alleged by me in such suit.

I hereby declare that I fully understand the contents and consequences of this Release, that I believe the aforesaid payment to be fair, reasonable, and adequate compensation to me, that I have been fully advised by my attorney and that his representation of me is deemed adequate and competent in all respects, that I request my attorney to join in the execution of this Release, and that I execute this Release on the 8th day of October, 1982, freely, voluntarily and without duress.

/s/ Carl Shoji Hamilton (SEAL)
CARL SHOJI HAMILTON
/s/ Raymond L. Clarke (SEAL)
RAYMOND L. CLARKE, ESQUIRE
Counsel for Carl Shoji Hamilton