**OILEX A.G., Plaintiff,**

v.

**MITSUI & CO. (U.S.A.), INC., Defendant.**

**No. 87 Civ. 2356 (EW).**

United States District Court, S.D. New York.

Sept. 15, 1987.

---

**8.** The ages and occupations of the children at the time of their father's death are not in dispute.

White & Case, New York City, for plaintiff; Robert R. Slaughter, of counsel.

Patterson, Belknap, Webb & Tyler, New York City, for defendant; David W. Dykhouse, Theodore B. Van Itallie, Jr., Mark K. Dietrich, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff Oilex A.G. ("Oilex") brings this action against Mitsui & Co. (U.S.A.) ("Mitsui") for breach of a November 1986 contract ("the Columbian contract") to purchase Columbian diesel fuel oil which Oilex claims did not meet the contract specifications. Mitsui counterclaims for plaintiff's breach of another contract to purchase Saudi Arabian gasoline allegedly entered into in January 1987. Oilex moves to dismiss the counterclaim on the ground that there was no agreement between the parties as alleged, or, in the alternative, moves for a stay of the counterclaim on the ground that, if an agreement existed between the parties, it required any dispute arising thereunder be arbitrated in London. Mitsui cross-moves for an order requiring plaintiff to post security for costs in the action involving the Columbian contract.

PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIM OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION

■■■ The contract at issue in Mitsui's counterclaim involved the sale of certain gasoline, which, in late 1986, Mitsui was negotiating to purchase from the Saudi Arabian national oil and mineral company Petromin. Mitsui, acting as a middleman, planned to resell the gasoline it purchased from Petromin to Oilex. From the beginning, the parties contemplated that this would be a "back to back" contract—that is, the contract between Mitsui and Oilex would in large part incorporate the terms of the contract between Petromin and Mitsui. It appears that Mitsui and Oilex also contemplated that the forum selection and arbitration clause might be different from that in the Petromin-Mitsui contract.[1]

Between early December 1986 and February 1987, Mitsui and Oilex engaged in an exchange of letters, telexes, and telefaxes containing proposed terms for the sale of the Saudi Arabian gasoline to Oilex. On December 8, 1986, Oilex sent a telex to Mitsui making a firm offer to buy gasoline "as per Petromin's terms and conditions" but specified "governing law/arbitration: English law/London." On December 19, 1986, Mitsui replied to Oilex confirming the offer "as per Petromin's terms and conditions . . . except governing law/arbitration English law/London." The latter telegram leaves it unclear as to whether Mitsui accepted the proposed alteration to the Petromin-Mitsui contract or rejected it.

In an exchange of telexes on December 23 and 24, Mitsui and Oilex indicated that the deal between them was "concluded. . . . Only thing pending is Petromin's counter-signature." On December 29, 1986, Mitsui wired Oilex, "we are pleased to agree your conditions for amicable settlement as per your telex . . . meantime in addition we appreciate your agreement to the following[:]. . . . contract shall be based on Saudi Arabian law and arbitration in London." Here it appears that Mitsui sought to have arbitration in London but the governing law was to be that of Saudi Arabia.

On January 5, 1987, Mitsui signed its contract with Petromin to purchase Saudi Arabian gasoline and telefaxed a copy to Oilex. Oilex responded on January 7, 1987, that it had received the Petromin-Mitsui contract and confirmed the agreement as per Mitsui's telexes, "except that Saudi Arabian law is to govern" and added "the contract will be handled operationally in every respect in accordance with instruc-

---

1. The Petromin-Mitsui contract provided, "This contract shall be governed by and interpreted in all respects in accordance with the laws and regulations of the Kingdom of Saudi Arabia. . . . If at any time any question, dispute, or differ- ence shall arise . . . then such question, dispute, or difference shall be settled by the Saudi competent authorities. The decision rendered by said competent authorities shall be final and binding on both parties without any recourse."

tions provided by Oilex." Again it is unclear whether Oilex is accepting or rejecting the proposal that Saudi Arabian law is to govern.

On January 14, 1987, Mitsui sent to Oilex a signed letter agreement stating, "This is to confirm our sale to you and your purchase from us of Saudi Arabian Natural Gasoline.... Terms and conditions of the contract will be as per attached contract [signed] between Mitsui and Petromin with the exceptions of following...." The exceptions that followed did not mention governing law or arbitration. The Petromin-Mitsui contract, which was incorporated by reference, provided for arbitration by the "Saudi competent authorities" without explicitly stating where the arbitration would take place.[2] Oilex signed the January 14, 1987, letter agreement and returned it on January 20, 1987, with another signed letter stating, "We agree with your letter based on the understanding that the agreement between us is as confirmed in your telex ... of January 5, 1987, and our telex ... of January 7, 1987." In the January 7 telex it was unclear whether Oilex was accepting or rejecting the proposal that "Saudi Arabian law is to govern." Mitsui refused to sign the January 20 letter agreement from Oilex. Subsequently, on February 3, 1987, Oilex accepted a cargo of gasoline from Mitsui in partial performance of the contract.

Oilex now claims that there was no contract between it and Mitsui because there was never an agreement as to the terms of the contract.[3] Consequently, Oilex moves to dismiss Mitsui's counterclaim based upon the alleged agreement. In the alternative, Oilex claims that, if there was an agreement between it and Mitsui, the agreement called for arbitration in London. Oilex requests, pursuant to 9 U.S.C. § 3, a stay of the counterclaim pending arbitration.

Federal arbitration law requires that any "written provision in any ... contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable."[4] Section 4 of the Arbitration Act provides that, after a party requests arbitration of a dispute, "upon being satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration." The arbitration agreement here in dispute is both in writing and involves commerce as defined in 9 U.S.C. § 1[5]; thus, if it appears that there was an agreement to submit all disputes to arbitration, this court is bound to honor it. Only if there is no valid arbitration agreement can the court retain jurisdiction.

It is evident that the Mitsui and Oilex agreed upon price, quantity, place of delivery, lifting schedules, and other arrangements, and also were in agreement that any dispute should be the subject of arbitration. The exchange of documents leaves it unclear, however, whether Mitsui and Oilex agreed on governing law and place of arbitration. In this circumstance, the court is unable to order the parties to proceed to arbitration. The uncertainty of where arbitration was to take place, and under what law, does not, however, vitiate the parties' contract if, as appears, all other material terms are clearly detailed and agreed to.[6] Under the circumstances, the

2. See n. 1 supra.

3. In addition to the disagreement over the choice of law and arbitration provisions, Oilex argues that there was also no agreement as to its proposal that "the contract will be handled operationally in every respect in accordance with instruction provided by Oilex."

4. 9 U.S.C. § 2.

5. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 401 n. 7, 87 S.Ct. 1801, 1805 n. 7, 18 L.Ed.2d 1270 (1967) (commerce requirement in the Arbitration Act read broadly to reach contracts which merely relate to interstate commerce). Section 1 provides that "commerce" means both interstate and foreign commerce.

6. Luis Hirsch y Cia. Sociedad Anonima v. Rosenblatt Casing Co., 418 F.2d 1300 (2d Cir.1969); J. Baranello & Sons v. Hausmann Indus., Inc., 571 F.Supp. 333, 340–41 (E.D.N.Y.1983); Kleinschmidt Div. of SCM Corp. v. Futuronics Corp., 41 N.Y.2d 972, 973, 395 N.Y.S.2d 151, 152, 363 N.E.2d 701, 702 (1977); City University of New York v. Finalco, Inc., 514 N.Y.S.2d 244, 246 (N.Y.App.Div.1987); Ernst Steel Corp. v. Horn Constr. Div., 104 A.D.2d 55, 481 N.Y.S.2d 833,

court retains jurisdiction of this case. Oilex's motion to dismiss the action or, in the alternative, to order arbitration, is denied.

## MOTION TO REQUIRE POSTING OF SECURITY

Mitsui moves for an order requiring Oilex to post security for costs arising from its action based upon the Columbian contract. It appears that Mitsui will need extensive discovery to defend itself in the action involving the breach of the agreement to provide diesel fuel meeting certain specifications. Plaintiff is a Swiss company and the alleged breach occurred in Columbia, South America. Thus it appears that pretrial depositions of witnesses and discovery will involve travel of lawyers to or from foreign countries, retention of foreign lawyers, and translation of evidence into English, all at great expense. Furthermore, it appears that plaintiff has no assets or is out of business.

Rule 39 of the Civil Rules of the United States District Court for the Southern District of New York authorizes the court to order any party to file an original bond for costs in such an amount and so conditioned as the court may designate. Where, as here, it appears that a party will be unable to pay the reasonable costs to which the opposing party will be entitled should it prevail, the court is well within its discretion to order the posting of security.[7] Oilex is accordingly ordered to post $25,000 security in cash or qualified surety undertaking with the clerk of the court within 10 days.

So ordered.

839 (1984); N.Y.U.C.C. § 2–204(3) (McKinney 1964).

7. *See Atlanta Shipping Corp. v. Chemical Bank,* 818 F.2d 240, 251–52 (2d Cir.1987).