The **BEVERLY HILLS DESIGN STUDIO (N.Y.) INC.** and Stevi Brooks, Plaintiffs,

v.

James **MORRIS**, individually and d/b/a Quality Apparel; Morris Sales, Inc.; Quality Life Products, Inc.; Shamrock Sportswear, Inc.; Name Brands, Inc.; CPTO Industries, Inc.; Cover Story, Ltd.; K & K Action Sports, Inc. and Jacques Moret, Inc., Defendants.

No. 88 Civ. 5886(LLS).

United States District Court, S.D. New York.

May 31, 1989.

Levin & Laytin, New York City, for plaintiffs; of counsel Jeffrey L. Laytin, Randy M. Friedberg.

Bernstein, Litowitz, Berger & Grossmann, New York City, for defendants James Morris, Morris Sales, Quality Life Products, Inc., Shamrock Sportswear, Inc., Name Brands, Inc., Cover Story, Ltd. and K & K Action Sports, Inc.; of counsel Edward A. Grossmann.

' Leahey & Johnson, P.C., New York City, for defendant Jacques Moret, Inc.; of counsel Michael Conforti.

Moses & Singer, New York City, for defendant CPTO Industries, Inc.; of counsel David Rabinowitz.

Benito Romano, U.S. Atty., Southern District of New York, New York City, for defendant U.S. Register of Copyrights; of counsel Nancy L. Savitt, Asst. U.S. Atty.

STANTON, District Judge.

Defendants move under Civil Rule 39 of the Local Rules of the Southern and Eastern Districts of New York for an order requiring plaintiffs to file a bond for security for costs and attorneys' fees. The motion is granted.

## BACKGROUND

Plaintiff Stevi Brooks is a designer of exercise clothing. She is president of plaintiff The Beverly Hills Design Studio (N.Y.) Inc. ("Design Studio") which markets her designs.

Defendant James Morris is president of defendant Morris Sales, Inc. ("Morris Sales") which manufactures and sells apparel. He is the majority shareholder of defendant Quality Life Products, Inc. which manufactures mattress pads. He is also a 50% shareholder in defendant Shamrock Sportswear, Inc. which manufactures stretch apparel for men and boys. Plaintiffs claim Morris owns or controls defendant Name Brands, Inc. which sells apparel. Plaintiffs refer to those defendants as the "Morris defendants".

In 1986 Brooks and Morris agreed that Morris Sales would manufacture and distribute her designs. Morris Sales was to

pay for all the manufacturing costs, bill the customers, and pay Design Studio a commission on the sales.

Morris Sales began to manufacture Brooks' designs, but disputes arose over production and the allocation of costs. In an effort to resolve these disputes Brooks and Morris revised their agreement to provide that Design Studio would pay Morris Sales on a per garment basis for the cost of manufacturing. However, the disputes continued.

Plaintiffs commenced this action on August 24, 1988 seeking relief for alleged copyright infringement, trademark infringement, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968 (1982 and Supp. IV 1986), and various pendent state law claims. They claim that the defendants infringed Brooks' copyright in paper patterns she created to aid in the cutting of fabric for her designs. Specifically, they say the Morris defendants reproduced the patterns in making unauthorized copies of Brooks' exercise clothes for the label of another Morris line of clothing, "Kim of the Carolinas." Declaration of Stevi Brooks, dated April 6, 1989, at ¶¶ 16, 37. The Morris defendants allegedly sold the copies to one or more of their customers: defendants CPTO Industries, Inc., Cover Story, Ltd., K & K Action Sports, Inc., and Jacques Moret, Inc., who then retailed them. First Amended Complaint, ¶¶ 43, 44.

Plaintiffs assert trademark infringement claims under Section 43(a) of the Lanham Act, 15 U.S.C. 1125(a), based on the trademarks "Stevi Brooks", "Stevi", and "Too Cute", the tradenames Design Studio and Stevi Brooks, and the trade dress of their designs. *Id.* at ¶ 17.

Plaintiffs never sought to register the trademarks or tradenames.

Their first claim, for false designation of origin and false representation,[1] alleges that 1) the defendants sold copies of their designs, labeled with an identification number given to Design Studio under the Textile Fiber Products Identification Act ("Textile Act"), 15 U.S.C. §§ 70–70k[2] and represented the copies were produced by plaintiffs or pursuant to plaintiffs' authority, 2) the Morris Defendants filed two Uniform Commercial Code ("UCC") Financing Statements with the North Carolina Secretary of State which fraudulently stated that Morris Sales was "trading as" Design Studio and that Design Studio was a "trade style" of Sales, and 3) the Morris defendants filed a Certificate of Assumed Name in Rockingham County, North Carolina which fraudulently stated that Morris Sales was "conducting business as" and owned Design Studio. *Id.* at ¶¶ 47–57.

Their second claim alleges that the defendants' sale of the copies constitutes trade dress infringement.[3] *Id.* at ¶¶ 58–61.

---

1. To state a claim for false designation of origin or false representation of an unregistered mark, plaintiffs first must demonstrate that their mark merits protection under the Lanham Act. *Thompson Medical Co. v. Pfizer, Inc.*, 753 F.2d 208, 212–13 (2d Cir.1985). "Then, if the mark is protectible, the plaintiff must establish the likelihood of confusion, 'that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question.'" *Yarmuth–Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 992–93 (2d Cir.1987) citing *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978) (per curiam), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

2. Such identification numbers are used "in lieu of the name of the person to whom the number has been issued in satisfying the identification requirement in labeling" under the Textile Act. 16 C.F.R. § 1.32.

3. To prevail on a claim for trade dress infringement, plaintiffs must satisfy three elements:

First, the plaintiff must demonstrate that the trade dress of its product is primarily nonfunctional. Second, the plaintiff must establish that the trade dress of its product has acquired "secondary meaning"—i.e., that the public has come to recognize the trade dress as associated with the plaintiff's product. Third, the plaintiff must show that the defendant's trade dress is likely to confuse or mislead consumers, either by causing them to think that the defendant's product *is* the plaintiff's product or by causing them to think that the two products come from the same source....

*Reader's Digest v. Conservative Digest, Inc.*, 821 F.2d 800, 803–04 (D.C.Cir.1987) (emphasis in the original) (citations omitted).

Defendants move pursuant to Civil Rule 39 of the Local Rules of the Southern and Eastern Districts of New York for an order requiring plaintiff to file a $100,000 bond for security for costs and attorneys' fees.

## DISCUSSION

Rule 39 states "The court ... may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." The Rule "assures that a defendant who is sued will, if successful, at least be able to recoup its costs." *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 631 F.Supp. 335, 352 (S.D.N.Y.1986), *aff'd*, 818 F.2d 240 (2d Cir.1987).

Defendants argue that a bond is necessary because of plaintiffs' precarious financial condition, and that the amount of the bond should include attorneys' fees that they will likely recover under Section 101 of the Copyright Act of 1976, 17 U.S.C. § 505 ("Copyright Act"), and Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a).

Plaintiffs respond that Design Studio is a "successful, profitable ongoing business", Brooks' declaration, at ¶ 42, and that Rule 39 allows a bond for security for costs only, and not for attorney fees.

### 1. Plaintiffs' financial condition

■ Morris claims that: 1) plaintiffs owe Morris Sales over $175,000 under the manufacturing agreements; 2) Design Studio wrote a $20,000 check to Morris Sales that bounced; 3) in 1987 plaintiffs' attorneys and accountants informed him that Brooks and Design Studio seemed to be in difficult financial straits; and 4) plaintiffs have moved their business headquarters several times in the last few years. Affidavit of James Morris, sworn to March 10, 1989, at ¶¶ 17–24.

Plaintiffs admit that Design Studio "is still in the process of repairing ... financial ... damages caused to it by the acts of defendants", Ptfs.' memo in opposition at 19 (hereinafter "P. Opp."), but say that it "recently had the two best months in its history." Brooks declaration, at ¶ 2.

However, plaintiffs not only offer no evidence to substantiate that statement, they also admit that they "may not have the financial resources required to post bond in the ... amount requested by defendants." P. Opp. at 19. *See Tri–Ex Enterprises, Inc. v. Morgan Guaranty Trust Co. of New York*, 80 Civ. 3856, 1985 WL 144 (S.D.N.Y. January 11, 1985) (LEXIS, Genfed library, Dist file) (plaintiff "argues, with no small irony, that the motion should be denied precisely because it has no funds with which to post a bond. The Court finds little merit in this self-defeating argument....")

Cases requiring a security bond generally involve plaintiffs with no reachable assets. *E.g., Atlanta Shipping*, 631 F.Supp. at 353 ($10,000 bond ordered where plaintiff is a debtor in bankruptcy with no liquid assets); *Oilex A.G. v. Mitsui & Co. (U.S. A.), Inc.*, 669 F.Supp. 85, 88 (S.D.N.Y.1987) ($25,000 bond ordered where plaintiff has no assets or is out of business). While Brooks and Design Studio are not bankrupt, they have not identified any assets which could satisfy an award of costs. Their concessions, and their prior dishonored obligations, show that defendants may be unable, if successful, to recoup their costs. Accordingly, defendants' application for a bond for costs is granted.

### 2. Attorneys' fees

While the language of Rule 39 limits itself to costs, attorneys' fees have been included in a cost bond where the defendant was statutorily entitled to them. In *Amjon Publishers, Inc. v. Home Box Office, Inc.*, 82 Civ. 4968 (S.D.N.Y. December 20, 1982), plaintiff alleged that defendant's exhibition of a television show infringed its copyright in a book. Amjon moved for a preliminary injunction enjoining Home Box Office's ("HBO") exhibition of the show and HBO moved under Rule 39 for security for costs including attorneys' fees. The court denied the injunction, holding that "Amjon has shown neither a probability of success on the merits nor a fair ground for litigation. Amjon has specified nine instances in which HBO's film is alleged to infringe Amjon's copyright.... None of

the nine examples presents an instance of infringement." *Id.* slip op. at 2. The court granted HBO's motion for a bond, stating "Because of the likelihood that HBO will prevail, this may be an appropriate case for an award of costs, which under 17 U.S.C. § 505 may include reasonable attorney's fees." *Id.* slip op at 6. The court directed Amjon to post a bond of $5,000.[4]

*Amjon* furthers Rule 39's purpose of providing a party with security that he will be able to recoup his litigation outlays. When a defendant is statutorily entitled to attorneys' fees, it is consistent that security may be required to cover them.

Here, both the Copyright and Lanham Acts provide that a defendant may recover attorneys' fees. Accordingly, the cost bond will include attorneys' fees if the defendants are likely to recover them under the Copyright and Lanham Acts.

## A. Copyright Act

■ Section 505 of the Copyright Act states:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

Plaintiffs enjoy a favored position with respect to fee awards.

> Because Section 505 is intended in part to encourage the assertion of colorable copyright claims and to deter infringement, fees are generally awarded to prevailing plaintiffs. Fees to a prevailing defendant should not be awarded when the plaintiff's claim is colorable since such awards would diminish the intended incentive to bring such claims. When

the plaintiff's claims are objectively without arguable merit, however, a prevailing defendant may recover attorney's fees under Section 505.

*Diamond v. Am–Law Publishing Corp.,* 745 F.2d 142, 148 (2d Cir.1984) (citations omitted).

Plaintiffs allege that the defendants infringed their copyright in paper patterns of Brooks' design. In April 1988 Brooks filed applications with the Copyright Office for registration of claims to copyright in these paper patterns. In June 1988 the Copyright Office refused registration. Brooks asked for reconsideration, and the Copyright Office again refused registration on the basis that the patterns were "useful articles" which are not copyrightable under 17 U.S.C. §§ 101 and 102.

Section 101 defines a "useful article" as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." It further provides that "the design of a useful article ... shall be considered a pictorial, graphic, or sculptural work [subject to copyright protection under Section 102] only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article."

The Copyright Office found that the paper patterns do not merely portray the appearance of the drawings or convey information. They are two dimensional designs of the useful articles, i.e. template type tools for use in the manufacturing process of making clothing. As such, the drawings are an integral part of the cut and shape of the clothing being made. The drawings merely follow the outline of the various pieces of

---

4. *See also Verone v. Taconic Telephone Corporation,* 85 Civ. 8574, 1988 WL 10871 (S.D.N.Y. February 6, 1988) (LEXIS, Genfed Library, Dist file) There, plaintiff asserted violations of the federal labor laws and pendent state law claims. The parties agreed to arbitrate two of the claims. The arbitrator ruled against Verone. Following that decision, plaintiff's counsel withdrew from the case, citing "serious disagreements" with Verone. *Id.* slip op. at 5. The court then ordered plaintiff to post a $10,000 bond for costs and "possible Rule 11 sanctions because of the arbitration award against him, his own attorney's refusal to continue, and our finding that Verone's remaining claims were tenuous and possibly not within the jurisdiction of this Court." *Id.* slip op. at 7.

clothing to be manufactured without the author adding a separable authorship on which registration can be based.

Your ... works are clearly distinguishable from clothing "patterns" which are registrable in our office.... Registrable "patterns" contain copyrightable textual expression in the form of instructions, and artistic pictorial expression depicting the appearance of the article of clothing. [Your] works ... lack this expression.

Exhibit 5 to Affidavit of Edward A. Grossman in support of defendants' motion, sworn to March 20, 1989.

Although the Copyright Office refused to register plaintiffs' patterns, rejection of the application does not bar plaintiffs' copyright claim. 17 U.S.C. § 411(a). However, the plaintiffs must

establish that the items were properly subject to copyright. That burden is heavy: the determinations of the Copyright Office ... are entitled to "considerable weight." That is especially so here where the same applications were rejected ... on two separate occasions. Moreover, the decision to register an article rests in the sound discretion of the Register of Copyrights, and the scope of judicial review is limited to whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

*Gemveto Jewelry Co. v. Jeff Cooper, Inc.,* 568 F.Supp. 319, 330 (S.D.N.Y.1983) (footnotes omitted).

Plaintiffs contend that "this Court will ultimately order that the works at issue be registered, and that they will thereafter successfully demonstrate that same have been infringed by a number of the defendants herein." [5] P. Opp. at 17. However, they have not shown why the Register of Copyrights' decision should be overturned.

The Register of Copyrights' decision does not at first blush appear to have been "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." In this Circuit, a useful article is

copyrightable if it contains a conceptually separate aesthetic element. *Brandir International, Inc. v. Cascade Pacific Lumber Co.,* 834 F.2d 1142, 1144 (2d Cir.1987). Such an element is present "where design elements can be identified as reflecting the designer's artistic judgment exercised independently of functional influences...." *Id.* at 1145. Conversely, there is no a conceptually separate aesthetic element where "design elements reflect a merger of aesthetic and functional considerations." *Ibid.*

These patterns were used to cut fabric for the manufacture of garments. They did not reflect Brooks' "artistic judgment exercised independently of functional influences", but were functional products not eligible for copyright protection.

Accordingly, plaintiffs' copyright infringement claim appears "objectively without arguable merit." Therefore, the defendants would likely recover attorneys' fees under Section 505. The security bond should thus include protection for attorneys' fees likely to be expended in defending against the copyright claim. *See Am-Law Publishing,* 745 F.2d at 148 (award of attorneys' fees limited to services rendered in defense of the copyright claim and does not include services rendered in defense of seven pendent state law claims).

**B. The Lanham Act**

■ Section 35(a) of the Lanham Act states

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled to [various remedies]. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

Here plaintiffs seek protection of unregistered marks. While Section 1117(a) seems to be limited to suits based on reg-

5. The Register of Copyrights has moved for summary judgment on the issue of the copyright registrability of Brooks' patterns.

istered marks, it also applies to suits asserting rights to unregistered marks. *Yeshiva University v. New England Educational Institute, Inc.,* 631 F.Supp. 146, 147 (S.D.N.Y.1986) (citations omitted). An award of attorneys' fees is justified if the "losing party prosecuted or defended [the] claim in bad faith." *Universal City Studios, Inc. v. Nintendo Co.,* 797 F.2d 70, 77 (2d Cir.), *cert. denied,* 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986).

Plaintiffs' trademark infringement claims are based on allegations that the Morris defendants fraudulently filed UCC financing statements and a Certificate of Assumed Name, and that all the defendants sold copies of plaintiffs' designs. With regard to the sale of the copies, Brooks avers that

> In or about February, 1987, an apparel "Supershow" was held in Atlanta. Defendant Morris had invited me to attend in order to represent the [Design Studio] line, and had informed me that he would be selling his "Kims of the Carolinas" line of clothing in order to close out all of his remaining inventory of same. I attended said show and observed a booth rented by Defendant Morris at which he was displaying aerobic bodywear under the name Kims of the Carolinas. The samples of the merchandise which were on display, however, were plaintiffs' "ripstop" design, were in plaintiffs' ... colors and, although they bore "Kims of the Carolinas" labels, the RN number on the label was 71604, the RN number assigned to [Design Studio]. The samples on display had swatches of colors attached to them all of which were the colors then in plaintiffs' production line....
>
> [I]n October 1987, while visiting a factory in North Carolina, I found ... garments in [a Morris employee's] office which were in plaintiffs' styles and bore [Design Studio's] RN number but did not bear plaintiffs' label. These were used by defendants to obtain additional business from third parties....
>
> Brooks' Declaration, at ¶¶ 16, 37.

Defendants respond that the alleged fraudulent filings could not constitute trademark infringement because "such filings in government offices would not even be known to the general buying public, and could not conceivably mislead, or confuse customers in retail stores." Defts' memo in support, p. 29. Further, the alleged selling of copies could not constitute trademark infringement because 1) they were sold under the "Kim of the Carolinas" label and thus would not confuse consumers and 2) misbranding of a Textile Act identification number does not state a claim for relief under the Lanham Act. *Springs Mills, Inc. v. Ultracashmere House, Ltd.,* 532 F.Supp. 1203, 1221 n. 30 (S.D.N.Y.), *rev'd on other grounds,* 689 F.2d 1127 (2d Cir.1982) (An action between private parties under the Lanham act is not the proper forum for enforcing the Textile Act).[6]

For the foregoing reasons, plaintiffs' federal claims seem to be of dubious merit. Indeed, there appears to be a reasonable question whether they are prosecuted in good faith. Accordingly, the security bond will include attorneys' fees likely to be expended in defending against plaintiffs' copyright and trademark claims. Since plaintiffs themselves contemplate taking over 20 depositions, it is evident that these expenses may be substantial.

### Conclusion

The motion for an order requiring plaintiffs to file a bond for security for costs and attorneys' fees is granted.

Plaintiffs are to post a bond in the amount of $20,000.00 within ten days.

So ordered.

---

**6.** Enforcement of the Textile Act is left to the    Federal Trade Commission. 15 U.S.C. § 70e.